Filed 3/24/16  P. v. Johnson CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH RAY JOHNSON et al.,<br><br>        Defendants and Appellants. | B256273<br><br>(Los Angeles County<br>Super. Ct. No. NA091413) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Arthur Jean, Jr., Judge.  Affirmed in part, reversed in part, and remanded.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant Kenneth Ray Johnson.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant Charles Anthony Mackbee.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

A jury convicted Kenneth Ray Johnson (Johnson) and Charles Anthony Mackbee (Mackbee) of first-degree murder (Pen. Code, § 187).[1] Because the jury also found true the special circumstance that the murder was committed during a robbery (§ 190.2, subd. (a)(17)), the trial court sentenced them to life without possibility of parole. On appeal, Johnson and Mackbee argue that (1) the special circumstance finding is defective because the jury was not instructed that it must find that a robbery participant who was not the killer either acted with the intent to kill or was a major participant acting with reckless indifference to human life, (2) such a finding is not otherwise supported by substantial evidence, (3) the court erred in not instructing the jury that it must unanimously agree which robbery they aided and abetted, and (4) the court erred in imposing a $10,000 parole revocation fine.[2] Johnson further argues that the court violated the confrontation clause and the rules of evidence in admitting out-of-court statements by Mackbee implicating Johnson. Although the court did not err in declining to give a unanimity instruction or in admitting Mackbee's statements, we conclude that the jury instructions were defective and that this defect was not harmless beyond a reasonable doubt. We therefore vacate the jury's finding as to the special circumstance and vacate the resulting sentences. Because there was nevertheless substantial evidence to support such a finding of the special circumstance, we remand so that the People may elect whether to retry that special circumstance or have the trial court impose sentence without the special circumstance finding. This disposition renders moot the propriety of the parole revocation fine.

### FACTS AND PROCEDURAL BACKGROUND

In early 2011, Philip Williamson (Williamson) was in the business of importing higher grade marijuana called "sour diesel" from northern California and reselling it to

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] They also contend that the trial court erred in awarding them no presentence custody credits. That issue became moot when the court granted this relief in post-trial motion.

marijuana dispensaries in West Los Angeles. He ran the business out of his Westside apartment, and kept a gun. Just before March 24, 2011, Williamson had stowed in his apartment approximately 11 pounds of sour diesel marijuana and somewhere between $100,000 and $375,000 or "even more than that" in cash.

Marcel Mackabee (Marcel)[3] knew Williamson and would sometimes smoke marijuana with him. Marcel decided to rob Williamson. Marcel enlisted the aid of Mackbee, his cousin; Mackbee recruited Johnson to be his "right-hand man" because Johnson was a "big, aggressive" guy. It is unclear whether the three planned in advance to shoot Williamson: Marcel later said they had not and that Johnson had "wowed out," but Mackbee later said they had agreed to "set [Williamson] up and [Johnson] would be the shooter."

The robbery took place on March 24, 2011. Around noon that day, Marcel drove his 4-Runner to West Los Angeles: A video camera at a West Los Angeles 7-Eleven recorded Marcel buying Verizon calling cards at 12:27 p.m., and the receipt for that purchase was found in Williamson's apartment. Marcel's cell phone also "pinged" off of a cell tower near that 7-Eleven at the same time.

Later that evening, Marcel drove Williamson to the residential garage in Long Beach where Johnson and his girlfriend lived at the time. A police car with license-plate recognition software captured Marcel's 4-Runner parked on a nearby street at 10:13 pm. Johnson and Mackbee met Marcel and Williamson inside the garage. Johnson posed as a businessman; he wore a suit and brought a briefcase. The meeting in the garage ended when either Johnson or Mackbee shot Williamson once in the head. It is unclear which of the two pulled the trigger. Johnson told his girlfriend and others that he had shot Williamson and was upset that Mackbee was taking credit for the shooting, while Mackbee told others *he* was the shooter.

---

**3**     We use his first name to avoid confusion given the similarity of his last name to Mackbee's. We mean no disrespect.

Johnson, Mackbee and Marcel put Williamson in the back of the 4-Runner and dumped him in an alley in just his underwear, socks and a T-shirt. Beside his body, they left a pillow whose case matched a comforter found in Mackbee's mother's room. Williamson was not yet dead, and he was still gasping for air when paramedics found him. Williamson died a few days later from the single gunshot wound to the head.

After dumping Williamson, Johnson changed clothes and met up with his girlfriend. He told her that he had "messed up," that he "fucked up" and that "shit didn't go right as planned." As they spoke, Johnson placed bags of clothing he had sliced up with scissors into different dumpsters. That same night, Johnson visited another friend and looked as if he were about to cry. He showed the friend a revolver wrapped in a towel, which he then used to wipe down the gun. When police later searched Williamson's apartment, there were no signs of forced entry and the cash and marijuana were gone. Marcel told a friend he had $100,000 in his car, and police later seized $38,700 in cash from a car driven by Marcel's wife; neither Johnson nor Mackbee knew anything about the additional cash and marijuana in Williamson's apartment.

In the days after the robbery, Johnson asked his girlfriend to burn some of his clothes in a fire pit, and then told her she was an accessory to murder for doing so. Mackbee also burned a jumpsuit in the fire. The garage floor had a big stain that looked like "red paint," and the futon in the garage had blood spots. Johnson and Mackbee repeatedly scrubbed the garage floor with chemicals, put bleach on rugs from the garage floor, and disposed of the futon. About a month after the shooting, Mackbee disassembled a "cowboy" gun and put it in a plastic bag.

After the robbery, both Johnson and Mackbee possessed sour diesel marijuana, including a big bag of it that they stored in the garage. Johnson started driving a black "benz," and Mackbee told a friend he was "sitting on $20,000."

4

In 2012, the People charged Johnson and Mackbee with first-degree murder (§ 187, subd. (a)).[4] The People also alleged that this was a special circumstance murder because it was committed in the course of a robbery (§ 190.2, subd. (a)(17)) and alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The People further alleged that Johnson had served one prior prison term (§ 667.5, subd. (b)) and that Mackbee had served four.

Following trial, the jury convicted Johnson and Mackbee of first-degree murder, and found the special circumstance and firearm allegations to be true. The court struck the prior prison term enhancements.

The trial court sentenced each defendant to life without the possibility of parole on the murder count, plus an additional year for the firearm allegation.

Each defendant timely appealed.

## DISCUSSION

### I.     Special Circumstance Finding

Johnson and Mackbee argue that (1) the jury's special circumstance finding that Williamson's murder was committed during the robbery must be vacated because the trial court did not instruct the jury on some of the elements necessary for the special circumstance—namely, that any participant in the robbery who was not the actual killer either acted with the intent to kill or was a major participant acting with reckless indifference to human life (§ 190.2, subds. (c) & (d)), and (2) the evidence to support these additional elements is legally insufficient, such that double jeopardy precludes any retrial on the special circumstance (*People v. Eroshevich* (2014) 60 Cal.4th 583, 591 ["'when a reversal rests upon the ground that the prosecution has failed to produce sufficient evidence . . ., the Double Jeopardy Clause bars the prosecutor from making a second attempt at conviction'"], quoting *Tibbs v. Florida* (1982) 457 U.S. 31, 42.) We independently review questions of instructional error and the sufficiency of the evidence

---

[4]      Marcel was charged and tried separately. His conviction and sentence were affirmed on appeal in an unpublished opinion. (See *People v. Mackabee* (June 20, 2014, B250143).)

(*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378 [instructional error]; *People v. Banks* (2015) 61 Cal.4th 788, 804 (*Banks*) [sufficiency of evidence is a "legal question," so we "examine the record independently" for "substantial evidence"].)

### A.    *Instructional error*

#### 1.    **Was there error?**

A defendant found guilty of first-degree murder is to be sentenced to death or life without the possibility of parole if the People charge, and a jury finds, that "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of . . . [¶] [r]obbery." (§ 190.2, subd. (a)(17)(A).) Where the defendant is the person who committed the murder during the robbery, nothing further need be proven. (§ 190.2, subd. (b); *People v. Lancaster* (2007) 41 Cal.4th 50, 90 (*Lancaster*).)

However, where the defendant is not the actual killer, the People must additionally prove that he (1) "with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission" of the murder (§ 190.2, subd. (c)), or (2) "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists" in the commission of the robbery "which results in the death of some person or persons" (§ 190.2, subd. (d)). These additional showings are elements of the special circumstance allegation. (E.g., *People v. Jones* (2003) 30 Cal.4th 1084, 1119 (*Jones*); see also CALCRIM No. 703 [pattern jury instruction spelling out these additional elements].) A trial court thus has a sua sponte duty to instruct a jury on these elements as part of its broader obligation to give instructions "on the general principles of law relevant to and governing the case," (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311; see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 469 [jury must find facts that increase a sentence beyond a reasonable doubt]; *People v. Davis* (2005) 36 Cal.4th 510, 567 [so noting, as to special

6

circumstance findings]), at least if "substantial evidence" supports the need for an instruction on the additional elements (*People v. Delgado* (2013) 56 Cal.4th 480, 488).[5]

The evidence established that there was only one shooter, and that the shooter was either Johnson or Mackbee. As to whomever was the shooter, there would be no instructional error because the People do not need to prove the additional elements set forth above as to the actual killer. (*People v. Letner & Tobin* (2010) 50 Cal.4th 99, 194 [finding no error in omission of additional elements at issue in this case as to actual killer]; *Lancaster*, *supra*, 41 Cal.4th at p. 90 [same]; *People v. Young* (2005) 34 Cal.4th 1149, 1206 [same].) The problem is this: As the prosecutor acknowledged during closing argument, the evidence does not conclusively establish which of the two— Johnson or Mackbee—was the killer. Because only one of them was the killer and because the other one was necessarily *not* the killer, either one of them could be a robbery participant who was not the killer. As a result, the trial court was obligated to instruct on the additional elements relevant to nonkillers as to both Johnson and Mackbee. Yet the court did not instruct on these additional elements as to either defendant. The court's sole instruction regarding the special circumstance required the jury find that "(1) the murder was committed while a defendant was engaged in or was an accomplice in the commission of a robbery; and (2) the murder was committed in order to carry out or advance the commission of the crime of robbery." The additional elements are entirely absent, and this omission constitutes instructional error even in the absence of a request for those instructions. (*People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*).)

### 2. Was the error harmless beyond a reasonable doubt?

"'[W]hen a trial court fails to instruct the jury on an element of a special circumstance allegation, the prejudicial effect of the error must be measured under the test set forth in *Chapman v. California* (1967) 368 U.S. 18, 24.'" (*Mil*, *supra*, 53 Cal.4th

---

[5] However, the jury need not expressly make a finding as to each element of this special circumstance. (*People v. Castenada* (2011) 51 Cal.4th 1292, 1327; *People v. Carter* (2003) 30 Cal.4th 1166, 1200-1201.)

7

at p. 409; *People v. Jones* (2003) 30 Cal.4th 1084, 1119.) Our task is to "'conduct a thorough examination of the record'" and assess whether we can "'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" (*Mil*, at p. 417, quoting *Neder v. United States* (1998) 527 U.S. 1, 19.) The omission of an element may be harmless beyond a reasonable doubt if that element "'was uncontested and supported by overwhelming evidence.'" (*Mil*, at p. 410, quoting *Neder*, at p. 17.) Conversely, the omission of an element is *not* harmless beyond a reasonable doubt if "'the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (*Mil*, at p. 417, quoting *Neder*, at p. 19; *People v. Sandoval* (2007) 41 Cal.4th 825, 838.)

As noted above, although there is instructional error only as to the robbery participant who was not the actual killer, we do not know whether that person is Johnson or Mackbee. Thus, the only way we can conclude that the instructional error in this case is harmless beyond a reasonable doubt is if it is harmless as to *both* Johnson *and* Mackbee as the nonkiller. We must therefore ask: Is there "uncontested and overwhelming" evidence—evidence that would preclude a finding to the contrary—that each defendant (1) acted with the intent to kill, or (2) was a major participant in the robbery who acted with reckless indifference to human life? We will address the second question first.

The statutory requirement that a nonkiller who participates in a robbery be a "major participant" acting with a "reckless indifference to human life" comes from the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137. (See *Banks*, *supra*, 61 Cal.4th at p. 794.) Our Supreme Court has looked to *Tison* to define those terms. (*Id.* at p. 798.)

A "major participant" in a robbery is someone whose "personal involvement" is "substantial"; such a participant need not be the "ringleader," but his or her involvement must be "greater than the actions of an ordinary aider and abettor." (*Banks*, *supra*, 61 Cal.4th at p. 802; *People v. Williams* (2015) 61 Cal.4th 1244, 1281.) Courts are to examine the totality of the circumstances when evaluating the extent of participation,

8

including several factors our Supreme Court has identified as relevant but not dispositive to the issue: (1) the defendant's role in planning the robbery; (2) the defendant's role in supplying or using lethal weapons; (3) the defendant's awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of other participants"; (4) the defendant's presence at the scene of the killing, such that they were in a position to "facilitate or prevent the actual murder"; and (5) the defendant's actions after the use of lethal force. (*Banks*, at pp. 802-803 & fn. 5.)

A person acts with "reckless indifference to human life" when the defendant "'"knowingly engag[es] in criminal activities known to carry a grave risk of death."'"" (*Banks*, *supra*, 61 Cal.4th at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577 (*Estrada*), quoting *Tison*, *supra*, 481 U.S. at p. 157.) The defendant must "'subjectively appreciate[]'" that his acts "'were likely to result in the taking of innocent life'" (*Banks*, at p. 802, quoting *Tison*, at p. 152), although jurors may infer that subjective awareness from the nature of the criminal activity itself (e.g., *People v. Mora* (1995) 39 Cal.App.4th 607, 617 [concluding that defendant "had to be aware of the risk" from the nature of his criminal activity]). Contrary to what Johnson and Mackbee suggest, statements from the charged defendants themselves regarding their mental state are not required. "[A]wareness that a robbery accomplice is armed, without more," is not enough to "establish[] the necessary subjective awareness of a grave risk of death." (*Banks*, at p. 809, fn. 8.)

The evidence presented at trial overwhelmingly establishes that both Johnson and Mackbee were "major participants" in the robbery of Williamson. Although the evidence is disputed as to whether the plan was to *murder* Williamson, there was overwhelming evidence of a plan to *rob* him: Marcel coaxed Williamson down to Long Beach; Mackbee recruited Johnson to pose as a businessman having some interest in Williamson's business; and Johnson got dressed up to play that part. More to the point, both Johnson and Mackbee were present in the garage when one of them shot Williamson. This meant that both had "the opportunity to dissuade the actual killer, . . . to aid the victim[], and thus [an] opportunity to prevent the loss of life." (*Banks*, *supra*,

9

61 Cal.4th at p. 803, fn. 5.)  Both Johnson and Mackbee possessed a firearm after the shooting.  Both put Williamson in the 4-Runner and then dumped him in the alley.  And both took Williamson's drugs and money as the fruits of the robbery.

Whether Johnson and Mackbee subjectively appreciated that their acts were likely to result in the taking of innocent life is, in our view, a much closer question.  On the one hand, Mackbee told friends that their plan was to "set [Williamson] up and [Johnson] would be the shooter."  Further, a jury could infer that Mackbee and Johnson "had to be aware" that robbing a marijuana dealer could entail some level of risk of death.  Both Mackbee and Johnson also claimed to have been the shooter after the fact, yet one of them was lying because there was only one shooter; moreover, such a post-crime boast sheds no light on what the nonkiller knew *in advance* of the robbery.  On the other hand, there was no evidence that, prior to the robbery, Johnson or Mackbee or Marcel had ever shot anyone, or otherwise brandished or possessed a gun.  More to the point, Marcel indicated that shooting Williamson had *not* been part of their plan and that Johnson had "wowed out."  Indeed, Johnson's post-robbery conduct seems to corroborate the unexpectedness of the shooting:  Johnson was nearly in tears, and told others that "shit didn't go right as planned" and that he had "messed up" and "fucked up."  From this evidence, a jury could rationally conclude that the killer's act was unexpected and impulsive, and thus could rationally find that the nonkiller did not subjectively appreciate that the planned robbery was likely to lead to a death.

This very same logic makes it possible for a rational jury to conclude that the nonkiller also had no intent to kill.

As a result, the instructional error was not harmless beyond a reasonable doubt and the special circumstance finding infected by this error must be vacated.

### B.    *Sufficiency of the evidence*

In evaluating the sufficiency of the evidence to support a special circumstance finding, we must view the evidence in the light most favorable to the prosecution and ask whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—to support the finding beyond a reasonable doubt.  (*People v. Boyce*

10

(2014) 59 Cal.4th 672, 691; *People v. Edwards* (2013) 57 Cal.4th 658, 715.)  As noted above, this question remains relevant despite our vacating of the special circumstance finding because a finding of legal insufficiency would bar any retrial.

In this case, there is sufficient evidence to support a finding that Johnson and Mackbee each was a major participant who acted with reckless indifference to human life within the meaning of section 190.2, subdivision (d) and the cases interpreting that provision.  As explained above, the evidence of Johnson's and Mackbee's major participation in the robbery was overwhelming and thus far in excess of what is necessary to constitute "substantial evidence."  The evidence of Johnson's and Mackbee's subjective appreciation of the risk of death, while not overwhelming enough to render the instructional error harmless beyond a reasonable doubt, was nonetheless substantial enough to support a finding by a properly instructed jury.  Mackbee's statement that he, Johnson and Marcel had agreed to "set [Williamson] up and [Johnson] would be the shooter" is sufficient by itself to sustain a finding that all of them not only appreciated a danger of death but were taking active steps to kill.  (E.g., *Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1247 ["'the testimony of a single witness is enough to prove a fact'"].)

Johnson and Mackbee analogize themselves to a getaway driver in a robbery who is taken unawares and is thus "merely present" when a fellow robber unexpectedly pulls out a gun and shoots someone.  They are correct that a sentence of death or, in California, of life without possibility of parole, may not be imposed on a "minor participant in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state."  (*Tison*, *supra*, 481 U.S. at p. 149 [discussing *Enmund v. Florida* (1982) 458 U.S. 782]; *Banks*, *supra*, 61 Cal.4th at pp. 799, 804-805 [concluding that a getaway driver who had no role in planning the robbery was not a major participant].)  But such a sentence may be imposed, as noted above, when the defendant's acts and mental state meet the requirements of section 190.2, subdivisions (c) and (d).  Thus, courts have upheld a jury's finding of this special circumstance as to a defendant who supplied his coparticipant with a gun, which the coparticipant used to shoot a robbery victim during their second armed robbery together (*People v. Proby* (1998) 60

11

Cal.App.4th 922, 928-929); as to a defendant who planned a robbery with two others, saw his coparticipant with a knife, and struck the victim with his fists until one coparticipant ran in and stabbed the victim to death with the knife (*People v. Bustos* (1994) 23 Cal.App.4th 1747, 1754-1755); and as to a defendant who helped plan the robbery of a drug dealer involving a coparticipant's brandishing of a rifle and watched as the coparticipant shot the drug dealer (*People v. Mora* (1995) 39 Cal.App.4th 607, 617). Mackbee's admission that he and Johnson anticipated robbing and shooting Williamson, along with their major participation in the robbery and their presence at the shooting itself, constitute sufficient evidence to support a finding of the special circumstance.

## II.    Unanimity Instruction

Johnson and Mackbee contend that there were two robberies—the robbery of Williamson in the garage and a second robbery when someone (likely Marcel) went back to Williamson's apartment to steal the cash and the bigger stash of marijuana—and that the trial court erred in not instructing the jury that it must unanimously agree on which of the two robberies underlies the felony-murder charge. We review this instructional error de novo.

A jury verdict must be unanimous. (Cal. Const., art. I, § 16.) Consequently, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) However, a "'unanimity instruction is not required when the acts alleged are so closely connected as to form part of one transaction.'" (*People v. Harris* (1994) 9 Cal.4th 407, 431, fn. 14, quoting *People v. Stankewitz* (1999) 51 Cal.3d 72, 100.)

The evidence reveals only one "robbery" of Williamson for two independent reasons. First, "[robbery] . . . is not confined to a fixed *locus*, but is frequently spread over a considerable distance and varying periods of time" that is linked by "a proximity of time and distance" as well as "a singlemindedness of the culprit's purpose." (*People v. Laursen* (1972) 8 Cal.3d 192, 199-200; *People v. Johnson* (1992) 5 Cal.App.4th 552, 561.) Here, Williamson was shot in the garage and his keys, wallet and some marijuana

12

were taken; the marijuana and cash in his apartment were taken soon thereafter. What is more, Johnson, Mackbee and Marcel robbed Williamson in order to take his marijuana and cash, and the taking of items from Williamson's apartment was driven by that same "singlemindedness" of purpose. Second, there was no second robbery. Robbery requires "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) As Williamson lay dying in the alley or in the hospital, the person who removed the marijuana and cash from Williamson's apartment did not take these items from Williamson. Indeed, that person's entry into the apartment may have occurred after Williamson's death, and "one cannot rob a dead person." (*People v. Davis* (2005) 36 Cal.4th 510, 562.)

The trial court thus did not err in refusing to give an unanimity instruction.

### III. Imposition of $10,000 Parole Revocation Fine

Johnson and Mackbee assert that the trial court erred in imposing but staying a $10,000 parole revocation fine under section 1202.45 because their sentences of life without possibility of parole preclude the possibility of parole. (See *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185 [where a defendant's "sentence does not presently allow for parole and there is no evidence it ever will, no additional restitution fine must be imposed"].) We agree that the imposition of this fine was error, but note that the error is now moot in light of our conclusion that the special circumstance finding—and the resulting sentence of life without possibility of parole—must be vacated. Whether a parole revocation fine is appropriate on remand depends upon whether the People seek to retry Johnson or Mackbee on the special circumstance and whether the jury finds that circumstance to be true.

### IV. Admissibility of Mackbee's Statements To Others

Johnson alone argues that the trial court erred in admitting evidence of three out-of-court statements by Mackbee: (1) Mackbee's statement to his long-time friend (and the garage's maintenance man) that he and Johnson committed the robbery; (2) Mackbee's statement to Johnson's girlfriend that he was "just as guilty as" Johnson

13

because Johnson and Marcel agreed to "set [Williamson] up and [Johnson] would be the shooter"; and (3) Mackbee's statement to his own girlfriend that he and Johnson and Marcel were involved the robbery and that Mackbee shot Williamson "because he wanted the money and the shit from the victim." Johnson argues that the admission of these statements (1) violated his right to confront witnesses under *Bruton v. United States* (1968) 391 U.S. 123, 135-136 and *People v. Aranda* (1965) 63 Cal.2d 518, 526-527, and (2) violated the hearsay rule because these statements do not qualify as "statements against penal interest" under Evidence Code section 1230. We review Johnson's claim of constitutional error de novo (*People v. Mayo* (2006) 140 Cal.App.4th 535, 553), and, because he objected below, we review his claim of evidentiary error for an abuse of discretion (*People v. Lawley* (2002) 27 Cal.4th 102, 153-154 (*Lawley*)).

### A.     Aranda/Bruton

Under *Aranda* and *Bruton*, a trial court violates a criminal defendant's constitutional right to confrontation if, during a joint trial, it admits a codefendant's statement that on its face also inculpates the defendant unless the codefendant testifies and submits to cross-examination. (*People v. Capistrano* (2014) 59 Cal.4th 830, 869; *People v. Hajek & Vo* (2014) 58 Cal.4th 1144, 1176-1177 (*Hajek & Vo*); *People v. Montes* (2014) 58 Cal.4th 809, 867.) In *Crawford v. Washington* (2004) 541 U.S. 36, the United States Supreme Court narrowed the scope of the right to confrontation; it now bars only those out-of-court statements that are "testimonial" when there is no opportunity for cross-examination. (*Id.* at p. 68.) An out-of-court statement is "testimonial" if it is "'made with some degree of formality or solemnity'" (*People v. Leon* (2015) 61 Cal.4th 569, 602-603, quoting *People v. Lopez* (2012) 55 Cal.4th 569, 581) or if the "primary purpose" of the statement "is to establish or prove past events potentially relevant to later criminal prosecution" (*Davis v. Washington* (2006) 547 U.S. 813, 822). By narrowing the right of confrontation generally, *Crawford* also limited the right of confrontation protected by *Aranda/Bruton*: Unless the codefendant's statement is "testimonial" within the meaning of *Crawford*, its admission at a joint trial does not violate *Aranda/Bruton*. (*People v. Arceo* (2011) 195 Cal.App.4th 556, 571, citing *United*

*States v. Figueroa-Cartagena* (1st Cir. 2010) 612 F.3d 69, 85; *United States v. Johnson* (6th Cir. 2009) 581 F.3d 320, 326.)

None of Mackbee's out-of-court statements is "testimonial." Casual conversations between private individuals are generally not formal or solemn enough to be considered "testimonial"; they are also not made with the primary purpose of advancing the investigation or prosecution of crime. (See *Hajek & Vo*, *supra*, 58 Cal.4th at p. 1214 ["(p)rivate communications between inmates are not testimonial"]; *People v. Cage* (2007) 40 Cal.4th 965, 989, fn. 20 [statements to private doctors not testimonial]; *People v. Blacksher* (2011) 52 Cal.4th 769, 817-818 [statements made to family members and not in response to police interrogation not testimonial].) Each of Mackbee's statements was made to friends and acquaintances and made long before Mackbee knew police had identified him as a suspect; the statements consequently lack the requisite formality and solemnity and were not made with the primary purpose of investigating or prosecuting crime. Because they are not testimonial, *Aranda/Bruton* does not apply.

### B.     *Statements against penal interest*

Although the hearsay rule generally bars the admission of out-of-court statements for their truth (Evid. Code, § 1200), one exception to this rule is for "statements by a declarant having sufficient knowledge of the subject" "if the declarant is unavailable as a witness and the statement, when made, . . . so far subjected him to the risk of . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.) To fit within this exception for "declarations against penal interest," the proponent of the statement must show that (1) "the declarant is unavailable"; (2) "the declaration was against the declarant's penal interest when made"; and (3) "the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Duarte* (2000) 24 Cal.4th 603, 610-611; *Lawley*, *supra*, 27 Cal.4th 102, 153.) To satisfy the third element, the statement must be "'truly self-inculpatory, rather than merely [an] attempt[] to shift blame or curry favor.'" (*Duarte*, at pp. 611-612, quoting *Williamson v. United States* (1994) 512 U.S. 594, 603.) In making this inquiry, courts should consider not only what was said, but

15

also "'the circumstances under which'" it was said, "'the possible motivation of the declarant, and the declarant's relationship to the defendant.'" (*Duarte*, at p. 614, quoting *People v. Cudjo* (1993) 6 Cal.4th 585, 607; *Lawley*, at p. 153 [statement must be viewed "in context"].) Ultimately, the exception reaches only those portions of a statement that are "'specifically disserving'" to the declarant and does not apply to "'any statement or portion of a statement not itself specifically disserving to the interests of the declarant.'" (*Duarte*, at p. 612, quoting *People v. Leach* (1975) 15 Cal.3d 419, 441.)

Johnson concedes that Mackbee was unavailable for cross-examination, but argues that Mackbee's statements were not against Mackbee's penal interest when made and that Mackbee's statements are unreliable because they attempt to shift the blame to Johnson. We disagree. In all three statements, Mackbee states that *he* was also involved in the robbery; indeed, in one of the statements, he admits that he is "just as guilty as" Johnson and in another *Mackbee* takes credit for the shooting. Each of the statements is "specifically disserving" to him. All three statements are also made to friends and acquaintances, people to whom Mackbee has no incentive to "shift blame" by inflating Johnson's role over his own. We accordingly conclude that the trial court did not abuse its discretion in determining that the People satisfied the prerequisites for admitting Mackbee's statements under Evidence Code section 1230.

### C.    *Harmlessness*

Even if we assume there was some constitutional or evidentiary error, that error would be harmless under *Chapman v. California* (1967) 386 U.S. 18, 24, or under *People v. Watson* (1956) 46 Cal.2d 818, 836-837. That is because Mackbee's statements indicating that Johnson was involved in the robbery were duplicative of Johnson's own statements, repeated numerous times to numerous people, that *he (Johnson)* was the shooter, and was thus involved in the robbery and/or shooting.

## V.    Cumulative Error

Because we conclude there was only one error and reverse on that ground, we have no basis to reverse due to cumulative error.

16

**DISPOSITION**

We affirm Johnson's and Mackbee's convictions for first-degree murder. We reverse the judgment imposing a sentence of life without the possibility of parole, vacate the special circumstance finding and remand to the trial court so that the People may elect whether to retry the defendants on the special circumstance or to have the trial court resentence Johnson and Mackbee without the special circumstance finding.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ


17