[No. B086630. Second Dist., Div. Four. Oct. 23, 1995.]

THE PEOPLE, Plaintiff and Appellant, v.
ERNEST ANGEL MORA, Defendant and Respondent.

## COUNSEL

Gil Garcetti, District Attorney, Diana L. Summerhayes and Brent Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Michael P. Judge, Public Defender, Albert J. Menaster, Reed Webb and Kathy Quant, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**VOGEL (C. S.), Acting P. J.—**

### INTRODUCTION

A jury convicted defendant Ernest Angel Mora and codefendant Alex Arredondo on four counts: (1) first degree murder with the special circumstances that the murder was committed in the course of burglary and robbery, (2) burglary, (3) robbery, and (4) attempted robbery. Defendant and Arredondo (not a party to this appeal) planned an armed robbery of a drug dealer in the dealer's home. According to plan, defendant, who knew the victim, gained entrance for the ostensible purpose of buying drugs, while Arredondo stood outside with a rifle. Arredondo then entered through the unlocked door, and during resistance by the drug dealer and another visitor, shot the drug dealer twice, killing him.

Because the prosecution did not seek the death penalty, the sole punishment provided by Penal Code section 190.2 for defendant's conviction of first degree murder with special circumstances is life imprisonment without possibility of parole. At defendant's sentencing hearing, however, the trial court concluded the statutory punishment of life imprisonment without parole is so grossly disproportionate to defendant's individual culpability as to constitute cruel or unusual punishment under *People v. Dillon* (1983) 34 Cal.3d 441, 477-489 [194 Cal.Rptr. 390, 668 P.2d 697]. Based on *Dillon*, the trial court reduced defendant's offense to ordinary first degree murder so as to sentence him to prison for 25 years to life instead of life without parole. The People appeal the trial court's order, contending it is unlawful or unauthorized. (Pen. Code, § 1238, subd. (a)(6), (10).) We agree that the trial court exceeded its authority by failing to impose the sentence prescribed by law, life imprisonment without possibility of parole.

## FACTUAL AND PROCEDURAL BACKGROUND

### Trial Evidence

The evidence at trial was provided by the eyewitness testimony of Robert Nale, the other victim. On August 21, 1992, Nale and the murder victim Richard Minard were in the living room of Minard's home about 1:30 a.m., watching television and smoking marijuana, when defendant knocked on the door. Nale had previously introduced defendant to Minard for the purpose of buying drugs. Nale opened the door and admitted defendant. Defendant asked to share a joint of marijuana. As they were so doing, Arredondo knocked on the door. Defendant asked if his friend, Arredondo, could come in and use the bathroom, which was agreed. When the door was opened, Arredondo pushed his way in pointing a high-powered rifle. Arredondo and defendant told Minard and Nale to get down on the floor, which they did. Arredondo then instructed Minard to get up and "get his boxes of shit." As Minard rose to his knees to get up, defendant grabbed him. Minard threw defendant off, and Arredondo fired a shot into the floor. Minard picked up a coffee table and threw it at Arredondo. Arredondo fired a shot into Minard's chest. Minard grunted and fell to his knees, whereupon defendant pushed him the rest of the way down. Arredondo then stepped over Minard's body and shot him in the back. Each gun wound was fatal.

Defendant and Arredondo then instructed Nale to break into Minard's bedroom, where money and Tupperware containers of marijuana were on the bed. Defendant picked up the money and marijuana. As they left the house, defendant and Arredondo told Nale not to say anything or they would come get him.

Defendant presented no defense evidence at trial.

### Defendant's Statement to Police

When police discovered defendant's involvement and interviewed him, he gave a statement the following January, which was *not* admitted into evidence at the jury trial, but the transcript of which was offered by defendant in support of sentence reduction under *Dillon*. Defendant told police: defendant and Arredondo had been drinking beer, when defendant said he wanted to get high and knew someone who sold drugs. Arredondo said, "Let's go rob him." Arredondo provided a rifle, and Arredondo and defendant went to the victim's house in defendant's car, driven by a third party who was not so drunk. Defendant could not identify the type of rifle Arredondo had, but described how it used large pointed bullets about three inches long. The plan

was for Arredondo to enter the house with the gun after defendant gained entrance. After defendant went inside and talked awhile with the victims, Arredondo came in through the unlocked door pointing the rifle and said "Don't move . . . get down on the floor." Nale attempted to grab the rifle from Arredondo, while Minard "rushed" defendant. Arredondo stepped back, and defendant heard a shot. Minard stepped back and fell to the floor. Defendant "froze" when Minard fell, and did not remember a second shot. Defendant did not know whether Minard was alive or dead. Defendant and Arredondo forced Nale to break open the bedroom door, and defendant grabbed the money and marijuana from the bed. Defendant told Arredondo not to shoot Nale. After they left, defendant and Arredondo fell asleep; when defendant awoke, Arredondo was gone with all the money and drugs; defendant got none of the proceeds. Defendant was bothered by the crime, because he never intended that anybody die; "nothing was supposed to happen"; nobody "was supposed to die"; it was "never supposed to go that far"; defendant only wanted to rob the victim of his drugs.

### Probation Report

The probation report showed defendant was 23 years old at the time of the murder (Aug. 1992) and had three prior convictions as an adult: (1) in January 1988 a burglary charge was reduced to misdemeanor theft, with 36 months' probation and 5 days in jail (defendant stole a "VCR"); (2) in May 1990 charges of burglary, assault, and malicious destruction of property were reduced to misdemeanor vandalism, with 12 months' probation and 60 days in jail (defendant kicked in a door in a dispute); (3) in June 1990 defendant was convicted of burglary and given a misdemeanor sentence of 12 months' probation with 10 days in jail (defendant did not recall the circumstances). Since dropping out of high school he had fathered two children and was intermittently employed in janitorial and fast-food work.

### Postrial Motions

Defendant moved for new trial, urging the court to find the evidence insufficient to show defendant acted with reckless indifference to human life as required by Penal Code section 190.2, subdivision (d). The trial court denied the motion for new trial.

In a sentencing memorandum defendant urged the trial court to reduce the sentence under *Dillon*. Defendant contended he deserved a lesser punishment than the actual shooter Arredondo; that according to his statement to police defendant never specifically intended the victim to die; and that according to numerous letters submitted to the court by defendant's relatives, defendant is caring, loving, and affectionate toward his family, well mannered and nice.

*Hearing*

The court first selected the determinate terms for burglary, robbery, and attempted robbery. The court imposed an upper base term and consecutive sentences, giving the reasons that the crimes involved great violence, planning, and sophistication, defendant had prior convictions, his crimes were numerous and of increasing seriousness, and his prior performance on probation was unsatisfactory.

As to the murder with special circumstances, however, the trial court reduced the offense to first degree ordinary murder so as to impose a term of 25 years to life instead of life without parole. The prosecutor argued that under Penal Code section 1385.1 the court had no power to strike the special circumstances finding. The court replied that *People* v. *Dillon*, *supra*, 34 Cal.3d 441, was still controlling and gave "a trial court . . . the discretion to modify the verdict" in view of "the nature of the offender, his state of mind and his culpability." The court concluded, "[I]n reviewing the taped conversation that the defendant had with Sergeant Verdugo, and the critical point that it was Arredondo and not Mora that was the shooter, there are certain mitigating factors in this case as far as defendant Mora is concerned."

The prosecutor argued the court should not consider defendant's statement to police because it was not in evidence at the trial, was contrary to Nale's testimony, was self-serving to minimize his role, and was not given until the police discovered defendant's involvement. The prosecutor also noted that defendant set up the crime and continued with the robbery after the victim was shot. The prosecutor contrasted the unsophisticated minor in *Dillon* with defendant, who was 23 and had a prior record, and further suggested the court's previous findings about the seriousness of defendant's prior record were inconsistent with finding in his favor under *Dillon*.

The court commented that while Arredondo was a cold-blooded killer, "I've got to distinguish Mr. Arredondo's actions from those of Mr. Mora. There's nothing that indicates in the record to me that Mr. Mora was going to participate in a shooting. . . . I can't equate [defendant's actions with Arredondo's, therefore defendant's sentence should be limited to] 25 years to life."[1]

*People v. Dillon*

In the case cited by the trial court, *People* v. *Dillon*, *supra*, 34 Cal.3d 441, an unusually immature 17-year-old with no prior criminal record became

---

[1]The court sentenced Arredondo to life imprisonment without possibility of parole. On Arredondo's appeal this court affirmed the judgment in a nonpublished opinion, *People* v. *Arredondo* (Apr. 21, 1995) B085306.

involved in a plan to steal growing marijuana from a field, and in a panic shot and killed a person who was guarding the field. He was guilty of first degree felony murder, but the trial court was reluctant to impose the statutory punishment of life imprisonment, which it considered extraordinarily harsh under the circumstances. The Supreme Court held the statutory punishment violated the cruel or unusual punishment clause of the California Constitution in the particular circumstances, and that the offense could be reduced to second degree murder in order to prevent unconstitutional punishment.

■ The basic test of a cruel or unusual punishment under *Dillon* is whether it is so disproportionate to the crime as to shock the conscience and offend fundamental notions of human dignity. (*People* v. *Dillon, supra*, 34 Cal.3d at p. 478.) The main technique of analysis under *Dillon* is to examine the nature of the offense and the nature of the offender. (*Id.* at p. 479.) (1) With respect to the nature of the offense, the court considers not only the offense in the abstract but also the facts of the crime in the particular case, "including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*Ibid.*) (2) With respect to the nature of the particular person before the court, the question is whether the punishment is "grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

## STANDARD OF REVIEW

■ In his capacity as respondent on the People's appeal, defendant argues the trial court had "discretion" to reduce the punishment pursuant to *Dillon*, and that where a trial court has discretionary power to decide an issue, its order may be reversed only for abuse of discretion, i.e., only if that discretion was exercised in an arbitrary, capricious, or patently absurd manner. (Citing *People* v. *Fudge* (1994) 7 Cal.4th 1075, 1105 [31 Cal.Rptr.2d 321, 875 P.2d 36] [discretion to allow or disallow a jury view of crime scene].) We disagree. The power exercised by a trial court under *Dillon* is not a discretionary one in the same sense defendant contends.

Upon a jury's verdict finding special circumstances to be true, Penal Code section 190.2 provides only two possible punishments, death or life imprisonment without possibility of parole. (*People* v. *Young* (1992) 11 Cal.App.4th 1299, 1308 [15 Cal.Rptr.2d 30].) A trial court has no statutory discretion to strike a special circumstance finding in order to reduce the punishment. Penal Code section 1385.1, enacted by the voters in 1990 in Proposition 115, provides, "Notwithstanding Section 1385 [discretion to

dismiss in furtherance of justice] or any other provision of law, a judge shall not strike or dismiss any special circumstance which is . . . found by a jury or court as provided in Sections 190.1 to 190.5, inclusive."

The punishment provided by law may, however, run afoul of the constitutional prohibition against cruel or unusual punishment in article I, section 17, of the California Constitution. If the punishment mandated by law for a special circumstances murder is so grossly disproportionate to a particular defendant's individual culpability as to constitute cruel or unusual punishment under *Dillon*, a court has authority to prevent the imposition of unconstitutional punishment. (See *People* v. *Webb* (1993) 6 Cal.4th 494, 536 [24 Cal.Rptr.2d 779, 862 P.2d 779] [dictum that a death sentence could be reduced under *Dillon,* but death sentence affirmed]; *People* v. *Davis* (1994) 7 Cal.4th 797, 817 [30 Cal.Rptr.2d 50, 872 P.2d 591] (conc. opn. of Kennard, J.)] [dictum that a sentence of death or even life without parole could be reduced under *Dillon*].) In such cases the punishment is reduced because the Constitution compels reduction, not because a trial court in its discretion believes the punishment too severe. Reduction of sentence under *Dillon* " 'must be viewed as representing an exception rather than a general rule.' " (*People* v. *Smith* (1986) 187 Cal.App.3d 666, 683 [231 Cal.Rptr. 897].)

Therefore, subject to a trial court's findings of the underlying facts on substantial conflicting evidence, a trial court's reduction of punishment under *Dillon* presents a question of law for an appellate court's independent review, not a discretionary decision to which the appellate court must defer. (E.g., *People* v. *Almodovar* (1987) 190 Cal.App.3d 732, 747-748 [235 Cal.Rptr. 616] [trial court's finding of disproportionate punishment reversed]; *People* v. *Sandoval* (1987) 194 Cal.App.3d 481, 485 [239 Cal.Rptr. 544] [trial court bound by prior appellate decision]; *People* v. *Williams* (1986) 180 Cal.App.3d 922, 926 [225 Cal.Rptr. 842] [question of law for court, not a jury question]; *see People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961] [on motion to suppress evidence, the trial court finds the historical facts, but the question whether, on those facts, the search was unreasonable is a question of law for the appellate court].)

Defendant reads too much into *People* v. *Leigh* (1985) 168 Cal.App.3d 217 [214 Cal.Rptr. 61]. There the trial court, although apparently desiring to do so, believed it had no *power* to reduce the offense under *Dillon*, and told the defendant her only remedy was to appeal her sentence to the Court of Appeal. The appellate court disagreed and remanded the case for the trial court to reconsider. It said, "[a]lthough appellate courts may review the proportionality of a sentence in felony-murder cases, we find nothing in

*Dillon* which precludes the trial court from performing such a function. We believe the trial judge is uniquely suited to do the kind of balancing of factors enunciated in *Dillon*. It is the trial judge who observes the witnesses, determines their credibility, and weighs the evidence. Thus, he has the firsthand opportunity to analyze the panoply of factors that must be considered in determining the offender's 'state of mind,' 'personal characteristics,' and the degree of danger the offender poses to society." (*Id.* at p. 223.) Although the appellate court referred to the trial court's "discretion" to determine proportionality under *Dillon (id.* at pp. 223, 224), it was in the context that the trial court erroneously believed it had no authority whatsoever on the issue. We construe *Leigh* to mean that a trial court has authority in the first instance to rule on a motion for sentence reduction under *Dillon*, and to find the underlying facts, but not that the trial court's ruling is a "discretionary call," to which an appellate court must defer. Reduction of sentence under *Dillon* is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels. Otherwise, Penal Code section 1385.1 could be routinely evaded in a trial court's discretion.

## DISCUSSION

■ The Constitution does not forbid even the death penalty (and here defendant received the lesser penalty of life imprisonment without parole (*People* v. *Loustaunau* (1986) 181 Cal.App.3d 163, 177 [226 Cal.Rptr. 216]) for a person who was not the actual killer and did not actually intend to kill, but who was a major participant in the underlying felony, acting with reckless indifference to human life. (*Tison* v. *Arizona* (1987) 481 U.S. 137, 152, 158 [95 L.Ed.2d 127, 140-145, 107 S.Ct. 1676] [death]; *People* v. *Purcell* (1993) 18 Cal.App.4th 65, 73, 76 [22 Cal.Rptr.2d 242] [life without parole].)[2] Penal Code section 190.2, subdivision (d), which was adopted to conform California law with *Tison* (*People* v. *Bustos* (1994) 23 Cal.App.4th 1747, 1753 [29 Cal.Rptr.2d 112]), contains that requirement.[3] ■ Here the jury was accordingly instructed that if defendant was not the actual

---

[2]Prior to *Tison* the court in *People* v. *Smith, supra,* 187 Cal.App.3d 666, reviewed numerous post-*Dillon* cases upholding felony-murder sentences of 25 years to life and noted "at least five cases in which the defendant, like Smith, was not the actual killer and apparently did not intend that the victim be killed." (*Id.* at p. 683, citing cases.)

[3]Penal Code section 190.2, subdivision (d) provides: "Notwithstanding subdivision (c), every person not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a), which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole, in any case in which a special circumstance enumerated in paragraph (17) of subdivision (a) of this section has been found to be true under Section 190.4."

killer, the jury could find special circumstances only if it found defendant acted with intent to kill or reckless indifference to human life and as a major participant in the underlying felony. (CALJIC No. 8.80.1 (1993 rev.).) By its verdict the jury impliedly so found. The trial court did not rule that the evidence was legally insufficient to support that conclusion or grant a new trial by reweighing the evidence.

There can be no question as to the "major participant" element. Even by his own statement defendant helped plan the robbery and was instrumental in arranging for Arredondo to enter the home with the rifle. Assuming the trial court gave credence to defendant's statement to police that he did not intend the victim to be killed, defendant's statement did not negate reckless indifference to life. Defendant admitted planning to go to a drug dealer's home at night to rob him by having Arredondo enter with a rifle which fired three-inch bullets. Defendant had to be aware of the risk of resistance to such an armed invasion of the home and the extreme likelihood death could result. (See *People* v. *Thompson* (1994) 24 Cal.App.4th 299, 308-309 [29 Cal.Rptr.2d 847] [driver of car from which firebombs were thrown at residence at midnight; affirming sentence of life without parole upon a *Dillon* analysis].) According to defendant's own statement he did not know whether Minard was dead or alive. He did not attempt to aid the victim but instead carried through with the original plan to steal the victim's drugs. Defendant personally carried away the loot, left the victim there to die, and threatened the remaining victim Nale. (*People* v. *Bustos, supra,* 23 Cal.App.4th 1747, 1754 [defendant "fled together with his accomplices and the robbery loot, leaving the victim to die"]; *Tison* v. *Arizona, supra,* 481 U.S. 137, 152 [95 L.Ed.2d 127, 140-141] [Ricky Tison "participated fully in the kidnaping and robbery and watched the killing after which he chose to aid those whom he had placed in the position to kill rather than their victims"].)

Paramount to the trial court's decision, indeed the only factor expressly mentioned, was its reasoning that defendant's sentence should be less than Arredondo's, because Arredondo was the actual shooter. In a discretionary sentencing scheme, that would certainly be an important consideration. Here, however, the sentencing scheme provides no discretion. The question is whether the Constitution *compels* that defendant's sentence be something less than Arredondo's. In light of defendant's major participation, we do not find it shocking to the conscience or offensive to fundamental notions of human dignity that defendant's sentence be the same as Arredondo's.[4] In capital cases, the California Supreme Court considers irrelevant that a

---

[4]Technically, Arredondo's sentence *will* be greater: Arredondo's sentence is life imprisonment without parole plus *four* years under Penal Code section 12022.5, subdivision (a) for

codefendant received a *lesser* penalty. (*People* v. *DeSantis* (1992) 2 Cal.4th 1198, 1251 [9 Cal.Rptr.2d 628, 831 P.2d 1210].) In *Dillon*, the Supreme Court did take into account that the other youths involved in the crime received "petty chastisements," compared to Dillon's life imprisonment. (*People* v. *Dillon*, *supra*, 34 Cal.3d at p. 488.) Here, however, Penal Code section 190.2 treats both participants equally; it does not treat defendant *worse* than Arredondo.

We conclude that the first *Dillon* factor, the nature of the offense including the way it was committed and the extent of defendant's involvement, does not compel reducing the statutory punishment as cruel or unusual.

The trial court did not expressly rely on the second *Dillon* factor, the nature of the offender. Defendant is certainly not like Dillon, a minor with a spotless prior record. He was 23 years old with 3 prior convictions, characterized by the trial court itself as numerous with increasing seriousness and unsatisfactory performance on probation. The second *Dillon* factor likewise fails to support a conclusion the punishment provided by law is grossly disproportionate to defendant's culpability. (*People* v. *Young*, *supra*, 11 Cal.App.4th 1299, 1310-1311 [adult with one prior felony who served time in jail and had additional arrests, a record termed "not horrendous" but sufficiently serious to negate the second *Dillon* factor; affirming sentence of life without parole for robber who caused fatal car accident while fleeing from robbery].)

## CONCLUSION

Neither the nature of the offense nor the nature of the offender compels a conclusion that in the circumstances of this case a sentence of life imprisonment without parole would be so grossly disproportionate as to violate the constitutional prohibition against cruel or unusual punishment. The trial court erred in failing to impose the term prescribed by law. Because the law specifies the only sentencing option, there is no need to remand the matter for a new hearing.

## DISPOSITION

The judgment is modified to provide that as to count 1 defendant is sentenced to imprisonment in the state prison for a term of life without the possibility of parole, plus one year pursuant to Penal Code section 12022, subdivision (a)(1). As so modified, the judgment is affirmed. The trial court

using a firearm; defendant is subject to a sentence of life imprisonment without parole plus only *one* year under Penal Code section 12022, subdivision (a)(1) for a principal being armed.

is directed to send an amended abstract of judgment to the Department of Corrections.

Hastings, J., and Klein (Brett), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 31, 1996.

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the chairperson of the Judicial Council.