Filed 2/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| In re DONALD WILLIAM MCDOWELL<br><br>on Habeas Corpus. | A157020<br><br>(Sonoma County<br>Super. Ct. No. SCR33484) |

Donald McDowell and Tyson Hutchison planned and executed a burglary and an attempted armed robbery of a drug dealer. Hutchison shot and killed the drug dealer. Although he was not the actual killer, McDowell was sentenced to life imprisonment without the possibility of parole after a jury convicted him of, among other things, first degree murder (Pen. Code, § 187, subd. (a))[1] and found true robbery-murder and burglary-murder special circumstances (§ 190.2, subds. (a)(17)(A), (G)).

After our high court decided *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), McDowell filed a petition for writ of habeas corpus, challenging the special circumstance findings. Having now reviewed McDowell's petition and supplemental brief, the Attorney General's return, and the traverse, we conclude the special

---

[1] Undesignated statutory references are to the Penal Code.

circumstance findings are adequately supported and deny McDowell's petition for writ of habeas corpus.

## BACKGROUND

### A.

Under the first degree felony-murder rule as it existed at the time of the shooting, a defendant who committed (or attempted to commit) robbery or burglary could be convicted of murder for a killing committed during the felony without further examination of his or her mental state. (Former § 189, amended by Stats. 1999, ch. 694, § 1; *People v. Chun* (2009) 45 Cal.4th 1172, 1182.) But the fact that a murder was committed during a felony specified under section 189, subdivision (a), remained "insufficient of itself to establish a felony-murder special circumstance." (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393.) A defendant (like McDowell) who aided and abetted the underlying felony but was not the actual killer, may only be subject to life imprisonment without parole if the prosecution proves the existence of special circumstances: either defendant intended to kill (§ 190.2, subd. (c)) or aided and abetted the commission of a specified felony "with reckless indifference to human life and as a major participant." (*Id.*, subds. (a)(17), (d).)

The "reckless indifference" and "major participant" requirements of section 190.2, subdivision (d), codify the limits announced in *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*). (*People v. Estrada* (1995) 11 Cal.4th 568, 575.) *Tison* held the Eighth Amendment does not prohibit imposition of the death penalty on a defendant convicted of first degree felony murder so long as the defendant was a "major participant" in the underlying felony who acted with "reckless indifference to human life." (*Tison, supra,* 481 U.S. at p. 158 & fn. 12.) Although these standards were developed in death penalty cases, they

2

apply equally to cases involving life imprisonment without the possibility of parole under section 190.2, subdivision (d).  (*Banks, supra,* 61 Cal.4th at p. 804.)

## B.[2]

The decedent, James Meehan, was a methamphetamine dealer.  On June 9, 2002, at about 3:00 a.m., Meehan was at his Santa Rosa residence with James L. and Micki A.

Micki responded to a knock on the door, and McDowell entered the house.  McDowell was armed with a "palm knife" — he held the knife handle in his palm, and the blade protruded through his index and middle fingers.  Hutchison entered the house shortly after McDowell.  Hutchison carried a small black revolver, which he pointed at Meehan, Micki, and James, while standing behind McDowell.

One of the two men said, "Give me your stuff."  McDowell looked straight ahead at Meehan and said, "Where's the shit?"  When Meehan said, "I don't have none" or " '[t]here's nothing here,' " Hutchison fired a shot into the floor next to Meehan.  In response, James said, " '[p]lease don't hurt him.' "  Meehan said, "kill me if you're going to kill me."  Micki grabbed a hard plastic case containing a drill and struck McDowell in the chest with it, knocking McDowell down.  Meehan tried to grab the gun from Hutchison.  Hutchison then fired two shots at Meehan who, grabbing his chest and bleeding from the mouth, stumbled into his bedroom and collapsed.

---

[2] The facts are primarily taken from this court's unpublished opinion in McDowell's direct appeal.  (*People v. McDowell* (June 2, 2009, A119754) [nonpub. opinion.].)  We deny as unnecessary the Attorney General's request for judicial notice of the appellate record.  (See *In re Reno* (2012) 55 Cal.4th 428, 484 ["Petitioners need not separately or specifically request judicial notice of all documents connected with their past appeals"].)

3

McDowell and Hutchison fled. Micki called 911 and attempted first aid. Meehan died as a result of two gunshot wounds to his torso.

Meehan was shot only "a few seconds" or a brief "pause" after Hutchison's first shot into the floor. The whole incident took "[m]aybe like a minute."

Pamela S. testified that on the weekend of the murder, she allowed McDowell and Hutchison to house-sit. Before she left, she told Hutchison she kept a .22-caliber revolver in her bedroom nightstand. A firearms examiner identified the revolver as the murder weapon. McDowell later told Pamela's daughter that he had been at the scene of the murder, in June 2002, and that he had to leave town afterward.

Harry S., who lived near McDowell at the time of the crime, testified that two days after the murder, McDowell said he and Hutchison had gone to the victim's home to "rip off a dealer" and "tak[e] [his] stuff." McDowell also said that a girl had hit him with a briefcase, he had not known that Hutchison had a gun, and he was "stunned" when Hutchison shot the victim.

K.F. recalled a conversation, before the murder, between McDowell and Joe Kampmann. Kampmann said "some guy" in Santa Rosa owed him money, and that "if he didn't have money, then [he] had drugs." Kampmann added, "If he didn't want to pay up, . . . he would be easy to take." Kampmann later shared a newspaper article about a homicide in Santa Rosa. K.F. discussed the article with McDowell, who told her that Hutchison shot the victim and that someone had hit him over the head.

Charles P., who briefly lived with McDowell, recalled hearing a conversation, in June 2002, between Kampmann, McDowell, and others, about a man who had "a lot of money and drugs in [a] safe." Charles believed Kampmann was "angry" because the man had "burned" him in what Charles

4

inferred was "a dope deal gone bad." McDowell asked Kampmann where the man lived. After the murder, McDowell tearfully told Charles that he had not intended to kill anyone and that he did not know Hutchison had a gun. McDowell stated he had only intended to "collect some money and dope" and to "[b]ully the guy."

A couple of days before the murder, McDowell's former neighbor (Sandy B.) gave him a ride to Santa Rosa. They drove around a residential neighborhood trying to find Meehan's house, and McDowell made a phone call when he could not find it. At some point, McDowell left the car for about 15 minutes. On a later occasion, McDowell showed Sandy a newspaper article regarding a homicide. McDowell was upset and told Sandy that Hutchison had killed someone when the two men had "gone back to the house."

### C.

A jury convicted McDowell of first degree murder (§ 187, subd. (a), count one), attempted robbery (§§ 664, 211, count two), and burglary (§ 459, count three). The jury also found both the burglary-murder and robbery-murder special circumstance allegations (§ 190.2, subd. (a)(17)(A), (G)) true. The jury also found true allegations that a principal was armed during the commission of these offenses (§ 12022, subd. (a)(1)) and that McDowell personally used a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)), in the commission of attempted robbery. McDowell was sentenced to a term of life imprisonment without the possibility of parole for special circumstance murder and a consecutive sentence of six years for his use of a deadly weapon and for a prior serious felony conviction (§§ 667, subd. (a)(1), 1170.12).

5

**D.**

McDowell filed a direct appeal. However, McDowell did not separately challenge the sufficiency of the evidence to support the special circumstance findings. This court affirmed the judgment in its entirety in an unpublished opinion, *People v. McDowell* (June 2, 2009, A119754) [nonpub. opinion].

Approximately six years later, our Supreme Court decided, in *Banks, supra*, 61 Cal.4th 788, "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant so as to be statutorily eligible for the death penalty" under section 190.2, subdivisions (a)(17) and (d). (*Banks* at p. 794.) *Banks* articulated a number of factors relevant to that determination. (*Id.* at p. 803.) The following year, our Supreme Court announced related considerations relevant to determining whether a defendant acted with "reckless indifference to human life." (*Clark, supra*, 63 Cal.4th at pp. 609-623.)

More than two years later, McDowell filed a petition for a writ of habeas corpus in the superior court, arguing that, under *Banks*, the evidence against him was insufficient to support the special circumstance findings. After the superior court denied the petition, McDowell, acting pro se, petitioned for habeas corpus relief in this court. We ordered the Secretary of the Department of Corrections to show cause why McDowell was not entitled to relief and appointed counsel to represent him. We limited our order to show cause to the *Banks/Clark* issue, and we do not address any other claims raised in McDowell's habeas petition. (*People v. Bloyd* (1987) 43 Cal.3d 333, 362–363.)

DISCUSSION

McDowell contends he is statutorily ineligible for life imprisonment without the possibility of parole because substantial evidence does not support the special circumstance findings.  We disagree.

**A.**

"The standard of review for a sufficiency of the evidence claim as to a special circumstance is whether, when evidence that is reasonable, credible, and of solid value is viewed 'in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the allegation beyond a reasonable doubt.' [Citations.] . . . We presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial." (*Clark, supra*, 63 Cal.4th at p. 610.)

**B.**

The *Banks* court noted that felony-murder participants may be placed on a culpability spectrum.  (*Banks, supra*, 61 Cal.4th at pp. 794, 800, 802, 811.)  At one end of the spectrum is the getaway driver who was " 'not on the scene, who neither intended to kill nor was found to have had any culpable mental state,' " and who is *not* eligible for the death penalty or life without parole.  (*Id*. at p. 800, citing *Tison, supra,* 481 U.S. at p. 149.)  At the other extreme is the actual killer or an aider and abettor who intended to kill—who *are* eligible for such punishment.  (*Banks, supra,* at p. 800, citing *Tison* at p. 150.)  "The defendants' actions in [*Tison,*] *supra*, 481 U.S. 137 and *Enmund v. Florida* [(1982)] 458 U.S. 782 represent points on [the] continuum. [Citation.] Somewhere between them . . . lies the constitutional minimum for death eligibility." (*Banks, supra*, at p. 802.)

To aid the determination of where to place a particular defendant on that continuum, *Banks* provided a list of nonexclusive factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at p. 803, fn. omitted.)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

Applying those factors, the *Banks* court concluded there was insufficient evidence that the appealing defendant was a "major participant." (*Banks, supra*, 61 Cal.4th at pp. 805-807.)  Like the defendant in *Enmund v. Florida, supra*, 458 U.S. at p. 784, the defendant in *Banks* was "no more than a getaway driver." (*Banks, supra,* at pp. 795-796, 804-805.)  No evidence was introduced about his role in planning the robbery or in procuring weapons, and, although he and two accomplices were gang members, no evidence was presented that any of them, including a third accomplice who shot and killed a security guard while robbing a marijuana dispensary, had previously committed a violent crime. (*Id.* at pp. 795-796, 804-805.)  Having dropped his accomplices off and waited a few blocks away (*ibid.*), the defendant was not present at the scene of the shooting and thus did not have "any immediate role" in instigating it. (*Id.* at p. 805.)  The *Banks* court also overruled earlier authorities by holding that a defendant's knowledge that accomplices were

armed in committing robbery is insufficient, by itself, to show he or she acted with reckless indifference to human life.  (*Id.* at pp. 807-811, 809 & fns. 8-9.)

In *Clark, supra*, 63 Cal.4th 522, the appellant was more than just a getaway driver.  He planned and orchestrated an after-hours burglary and attempted robbery of a computer store.  But he was in a car in the store's parking lot when an accomplice shot the mother of an employee who unexpectedly arrived during the attempted robbery.  (*Id.* at pp. 536-538, 612-614.)

The *Clark* court deemed it unnecessary to decide whether the defendant was a "major participant" because the evidence was insufficient to show the defendant had acted with reckless indifference to human life. (*Clark, supra,* 63 Cal.4th at p. 614.)  The court noted that the two elements overlap: " 'the greater the defendant's participation in the felony murder, the more likely that he or she acted with reckless indifference to human life.' " (*Id.* at p. 615.)  The court applied a slightly modified version of the *Banks* factors to assess mens rea, including (1) the defendant's knowledge that weapons would be used and/or his personal use of weapons; (2) the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of his accomplice's propensity to kill; and (5) the defendant's efforts to minimize the risk of violence in the commission of the felony.  (*Id.* at pp. 618-622.)

The *Clark* defendant did not carry a weapon, and the sole weapon involved was a gun carried by his accomplice, loaded with a single bullet. (*Clark, supra*, 63 Cal.4th at pp. 537, 612-613, 618-619.)  The defendant was also at the far end of the parking lot at the time of the shooting, near the store's loading doors, and thus had no chance to intervene or prevent the

shooting. (*Id.* at pp. 537, 619-620.) There was no evidence the defendant knew the shooter had a propensity for violence or that the defendant could predict the use of lethal force by having an opportunity to observe his accomplice's demeanor immediately before the shooting. (*Id.* at p. 621.) Finally, the robbery had been planned for after closing time, and the defendant expected his accomplice would minimize employee contact by handcuffing employees in a bathroom. (*Id.* at pp. 537, 612-613, 620-621.) The court concluded there was "nothing in the plan that . . . elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id.* at p. 623.)

### C.

We are not persuaded that McDowell's "major participant" finding is unsupported. To be a major participant, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks, supra*, 61 Cal.App.4th at p. 802.)

This case is different from McDowell's cited cases in several key respects. First, unlike the defendants in *Enmund* and *Banks,* McDowell was instrumental in planning and directly perpetrating the burglary and attempted robbery that led to Meehan's death. (*Enmund, supra*, 458 U.S. at pp. 784, 795; *Banks, supra*, 61 Cal.4th at pp. 795-796, 804-805.) The evidence suggests McDowell helped plan the robbery after hearing Kampmann talk of being "burned" by a drug dealer who had money and drugs in a safe. In particular, McDowell asked where the dealer lived and then checked out Meehan's house before the burglary. On the day of the crimes, McDowell knocked on Meehan's door and entered first, brandishing a knife to facilitate Hutchison's entrance, and demanded, "[W]here is the shit?"

10

Although there is no evidence McDowell supplied the murder weapon, McDowell was himself armed with, and brandished, a deadly or dangerous weapon. Moreover, McDowell's decision to arm himself with a palm knife should be viewed in combination with the particularly risky crime that he planned and led—a home invasion robbery of a methamphetamine dealer. This was not a garden-variety robbery. (See *Clark*, *supra*, 63 Cal.4th at p.617 & fn. 74.) The potential for it to turn deadly was obvious.

In further contrast with the authorities McDowell relies on, McDowell was present at the scene of the shooting and had an opportunity to restrain Hutchison, or otherwise intervene on Meehan's behalf, either when he entered Meehan's house and realized they would be outnumbered or, at the very least, after Hutchison fired the first shot. (Cf. *Banks, supra*, 61 Cal.4th at p. 795; *Clark, supra*, 63 Cal.4th at pp. 619-620; *In re Ramirez, supra,* 32 Cal.App.5th at p. 405 [defendant was not "close enough to exercise a restraining effect"]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1023, 1025 ["[defendant] was across the street in the parking lot when the shooting took place, and there was no evidence he . . . had the opportunity to stop the shooting"].) If lethal force is not part of the plan, "absence from the scene may significantly diminish culpability for death." (*Banks, supra,* 61 Cal.4th at p. 803, fn. 5.) "As a corollary, there may be significantly greater culpability for accomplices who are present." (*In re Loza* (2017) 10 Cal.App.5th 38, 50 (*Loza*); accord, *Tison, supra*, 481 U.S. at p. 158.)

McDowell attempts to minimize his opportunity to intervene by pointing out that he was knocked to the ground during the seconds that passed between the first and second shots. We agree that the opportunity was brief, but we reject McDowell's argument that he had no time to say or do something. After Hutchison fired the first round into the floor, there was

11

enough time for others to take action: James implored the intruders not to hurt Meehan, Meehan said, "kill me if you are going to kill me," and both Micki and Meehan physically fought back.

Considering these circumstances in total, we conclude substantial evidence supports the finding McDowell was a major participant in the felony that led to Meehan's death.

## D.

Although McDowell presents a closer question on "reckless indifference to human life," we conclude substantial evidence also supports that finding.

## 1.

Reckless indifference requires a defendant to be " ' "*subjectively* aware that his or her participation in the felony involved a *grave risk* of death." ' " (*Banks, supra,* 61 Cal.4th at p. 807, second italics added.)  "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*Id.* at p. 808.)  "[A]lthough the presence of some degree of defendant's subjective awareness of taking a risk is required, it is the jury's objective determination that ultimately determines recklessness. . . . [A] defendant's good faith but unreasonable belief that he or she was not posing a risk to human life in pursuing the felony does not suffice to foreclose a determination of reckless indifference to human life." (*Clark, supra,* 63 Cal.4th at p. 622.)  Jurors can infer the defendant's subjective awareness from the defendants' actions.  (*People v. Mora* (1995) 39 Cal.App.4th 607, 616-617.)

## 2.

With respect to the first *Clark* factor (knowledge and use of weapons), even accepting McDowell's self-serving statements after the crime that he did

not know Hutchison had a gun, it is nonetheless true that McDowell himself brought a knife to Meehan's house (and brandished it) in an effort to rob Meehan. Indeed, if he truly did not know that Hutchison was armed, the inference is stronger that McDowell was prepared to use his knife. Furthermore, McDowell knew, by no later than the first shot, that Hutchison was both carrying and willing to fire a gun. Thus, the first *Clark* factor cuts against McDowell's position.

Our Supreme Court has emphasized that the planning of or participation in a felony, even one in which the perpetrators will be armed, is not by itself sufficient to show reckless indifference. (*Clark, supra*, 63 Cal.4th at pp. 613-623; *Banks, supra*, 61 Cal.4th at pp. 807-810.) Here, however, McDowell was not only armed with a deadly weapon, and (at some point) knew Hutchison was armed with and willing to fire a gun, but he also chose to plan and lead a crime with a particularly high risk of violence—a home invasion robbery of a drug dealer. In this scenario, it was foreseeable that customers or others could be present, even early in the morning, and that either the dealer himself or his customers might be armed or high and thus more likely to resist.

Moreover, when McDowell first entered the house, it was immediately obvious that he and Hutchison were outnumbered, increasing the chances of resistance. Yet McDowell chose to proceed. While competing inferences are possible, a reasonable jury could infer that McDowell was aware that the situation could quickly turn deadly. (See *People v. Gonzalez* (2016) 246 Cal.App.4th 1358, 1364, 1385, affd. on other grounds in *People v. Gonzalez* (2018) 5 Cal.5th 186 [defendant proposed robbing victim, lured victim to scene where she remained, informed accomplices that victim was drug dealer, who had been violent in past, and did not render aid].) This is not a case, like

*Clark*, where there was "nothing in the plan . . . that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Clark, supra,* at p. 623.)

As we discussed above, McDowell's proximity to the crime and opportunity to restrain Hutchison also increase his culpability. In contrast to the defendant in *Clark*, McDowell was in a position "to observe anything in [the shooter's] actions just before the shooting that would have indicated that [the shooter] was likely to engage in lethal violence." (*Clark, supra,* 63 Cal.4th at p. 621.) Hutchison's first shot certainly qualifies. The standoff then grew more fraught when Meehan responded to the warning shot by saying, "kill me if you are going to kill me." In this moment, there was a brief but critical opportunity for McDowell to say or do something to deescalate the situation. Instead, he remained silent as others (James, Meehan, and Micki) verbally and physically intervened. Thus, jurors could have reasonably inferred McDowell ignored chances to minimize the risks of lethal violence that were inherent in his plan and that materialized as he carried it out. (See *Loza, supra,* 10 Cal.App.5th at pp. 51, 53 [defendant had "time to observe and react before the murder" because he heard accomplice threaten to shoot and count to five].)

The duration factor weighs somewhat in McDowell's favor, given the rapid chain of events after McDowell and Hutchison entered Meehan's home. Nor was there any evidence that McDowell knew Hutchison had a violent past. With respect to aiding Meehan after the shooting, McDowell's flight does not cut one way or the other given the possibility that James and Micki would summon aid, which in fact they did. (See *Clark, supra,* 63 Cal.4th at p. 620.)

14

On this record, substantial evidence supports the conclusion McDowell acted with reckless indifference to human life.  His culpability reflects the fact that he was deeply involved in planning and carrying out a crime with obvious risks of lethal violence.  (See *Banks*, *supra*, 61 Cal.4th at p. 801 [a court "must examine the defendant's *personal* role in the crimes leading to the victim's death and weigh the defendant's individual responsibility for the loss of life"].)  Because the special circumstance findings are adequately supported and habeas relief is not appropriate, we need not address the Attorney General's arguments that the petition is procedurally barred.  (See *Loza, supra,* 10 Cal.App.5th at pp. 41-42, 55.)

**DISPOSITION**

The petition for writ of habeas corpus is denied.

                                           _____
                                           BURNS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

A157020

Superior Court of Sonoma County, No. SCR33484, Hon. Rene A. Chouteau

Donald McDowell, in pro. per. and Victor J. Morse, By Appointment of the First District Court of Appeal under the First District Appellate Project, for Petitioner.

Xavier Becerra, Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, and David H. Rose, Deputy Attorney General, for Respondent.