Filed 4/29/25  P. v. Hooker CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C100324 |
| v. | (Super. Ct. No. 10F06795) |
| ROMAN HOOKER, | |
| Defendant and Appellant. | |

In 2009, defendant Roman Hooker participated in an attempted home invasion robbery during which accomplice Elias Garcia shot and killed Donald Kirby.  A jury found defendant guilty of first degree murder and attempted robbery and found true a special circumstance allegation that the murder was committed while defendant was engaged in attempted robbery.  The trial court sentenced defendant to life in prison without the possibility of parole.

In 2019, defendant filed a petition for resentencing under what is now Penal Code section 1172.6.[1]  The trial court denied the petition after an evidentiary hearing.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Defendant now contends substantial evidence does not support the trial court's finding that he was a major participant in the attempted robbery who acted with reckless indifference to human life. Finding sufficient evidence to support the trial court's determination, we will affirm the order denying the petition for resentencing.

BACKGROUND

Donald Kirby's body was found just inside the door of his Oak Park apartment with a gunshot wound. Officers recovered a .40-caliber Smith & Wesson design casing manufactured by Federal at the scene. A bullet had entered Kirby's right cheek.

Shortly before the shooting, a neighbor saw a Chevy sedan park near an alley close to Kirby's apartment building. Four men got out of the car. One of the men wore a camouflage jacket and carried a backpack. The neighbor subsequently heard a pop and saw three of the men run back to the car, laughing.

A second neighbor saw a man standing at the bottom of the stairs leading to Kirby's apartment. After the man started up the steps, the neighbor heard a bang and saw three men run down the stairs and toward the alley. A third neighbor heard three loud sounds, opened her apartment door, and saw three men run down the stairs and toward the alley.

Chewing gum found nearby contained the DNA profile of Calvin Holmes. Holmes later identified Elias Garcia as the shooter and Christopher Merrill as another person involved in the attempted robbery. Holmes ultimately entered a plea to attempted residential robbery in concert with two or more people, and admitted that a principal was armed during the offense.

Merrill eventually reported that Garcia was the shooter and that Garcia had a .40-caliber gun. Merrill identified Garcia, Holmes, and defendant as the other people involved in the attempted robbery. Merrill pleaded to manslaughter and attempted robbery.

2

During a search of Garcia's home, .40-caliber Smith & Wesson design rounds manufactured by Federal were found.

Holmes testified for the People. He said he picked up Garcia and defendant the morning of the shooting in a Chevy Caprice. Garcia wore a camouflage jacket and both Garcia and defendant had backpacks. The group then picked up Merrill. Merrill identified a proposed robbery target, a weed dealer who would have weed or drugs and $15,000 at his home. But that initial robbery target was abandoned.

Holmes testified that Garcia did not want to go home empty-handed, so he told the group there was an easy robbery they could do in Oak Park. He said there would be laptops, weed, and money there and the target (Donald Kirby) would be home because it was early morning. They all agreed to commit the robbery. Garcia said he would knock on the door and when Kirby opened the door they would rush him and make him lay down.

According to Holmes, on the way to Oak Park, Garcia, Merrill and defendant said they had their guns, but Holmes did not see any guns. After Holmes parked the car, Garcia, Merrill and defendant got out and took the backpacks. Holmes heard a gunshot a few minutes later and saw the three running to the car. Merrill asked Garcia why he did that, and Garcia said he had to do it because Kirby moved. Garcia and defendant looked like nothing had happened. When Holmes dropped the three off, Garcia told everyone not to talk about it again.

Merrill also testified at trial. He said that when Garcia and defendant showed up at Merrill's home the morning of the shooting, Garcia wore a camouflage jacket and asked Merrill about robbery targets. Because the dealer at Merrill's apartment building had a gun, and children lived there, the group decided not to rob him. Garcia told Holmes to drive to Kirby's apartment building. Garcia explained where the building was located because defendant was unfamiliar with the location.

3

According to Merrill, Holmes parked near the apartment building. Garcia, Merrill and defendant eventually walked to Kirby's apartment. Merrill stood at the bottom of the stairs, Garcia was on the landing at the top of the stairs, and defendant stood in the middle of the stairway. Garcia knocked on the door with his gun out and his hand covering the peephole on the door. Defendant stood right behind Garcia with a .38 revolver in his hand. Kirby repeatedly asked who it was. Garcia said a name in a gruff voice and Kirby opened the door. Garcia pointed his gun at Kirby but Kirby grabbed the barrel of the gun and tried to close the door. Defendant pushed Garcia inside the apartment. Merrill walked up the stairs when Garcia and Kirby started tussling, and he saw Garcia shoot Kirby. Merrill, defendant and Garcia ran to the car. Garcia said he had to "dome" Kirby, meaning shoot Kirby in the head, because Kirby grabbed the gun. Garcia told the group, "loose lips sink ships."

The jury found defendant guilty of first degree murder (§ 187, subd. (a) -- count one) and attempted robbery (§§ 644, 221 -- count two). It found true a special circumstance allegation that in the commission of the murder, defendant was engaged in attempted robbery within the meaning of section 190.2, subdivision (a)(17). The jury found not true allegations that in the commission of the murder and attempted robbery, defendant was personally armed with a firearm. The trial court sentenced defendant to life in prison without the possibility of parole. On direct appeal, this court struck a parole revocation fine but otherwise affirmed the judgment. (*People v. Garcia* (Mar. 27, 2018, C077082) [nonpub. opn.].)

Four and a half years after the sentencing, defendant filed a petition for resentencing under what is now section 1172.6. The trial court denied the petition, concluding that the jury's special circumstance finding meant defendant was a major participant who acted with reckless indifference to human life and defendant was, therefore, ineligible to be resentenced.

4

This court reversed the trial court's order because the special circumstance finding was made before *People v. Banks* (2015) 61 Ca1.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Ca1.4th 522 (*Clark*). (*People v. Hooker* (Sept. 21, 2022, C094262) [nonpub. opn.].) On remand, the trial court issued an order to show cause, appointed counsel for defendant, and held an evidentiary hearing.

The trial court found defendant guilty of murder under a felony-murder theory beyond a reasonable doubt and denied the petition. It determined that defendant was a major participant in the attempted robbery and made the following findings. Defendant was in the vehicle while the plan was developed to rob Kirby, and defendant agreed to perform the robbery. Defendant's role was to force entry into Kirby's home after Kirby opened the door and to help force Kirby to lay down on the floor. Prior to agreeing to the plan to rob Kirby, defendant, Garcia, and Merrill contemplated robbing a different dealer but decided not to carry out the robbery because of the possibility that the dealer would be armed. Given that Kirby was also a dealer, that the Kirby robbery would be a home invasion robbery where the victim could potentially have access to a weapon, and that defendant had a role in breaching the door, defendant would have known of the dangers of that type of robbery prior to agreeing to it. When the shooting occurred, defendant was attempting to gain entry into Kirby's residence by pushing Garcia through Kirby's front door while Kirby struggled to gain control of Garcia's gun. Kirby was shot in the face during the struggle. After the shooting, defendant did not render aid to Kirby or call for help, instead he fled the scene with Garcia, Merrill, and Holmes. He was part of the group that was overheard laughing as they made their escape.

The trial court also found beyond a reasonable doubt that defendant showed reckless indifference to human life. It said defendant's decision to agree to his particular role in the attempted robbery and to physically engage Kirby was significant. It found defendant's level of participation necessarily meant he was prepared to violently engage Kirby in order to restrain him. Once the robbery began, defendant decided to aid Garcia

in attempting to overcome Kirby while Kirby struggled to gain control of the gun and the fatal shot was fired. The trial court found that defendant's decision to flee, and not to render aid or call for assistance, was also significant. It added that although the interaction with Kirby was brief, defendant had time to contemplate the robbery before it occurred. The trial court also considered defendant's age, noting he was 23 years old at the time of the crimes and there was no evidence he lacked the experience, perspective, or judgment to preclude a finding of reckless indifference to human life, or that he was vulnerable to peer pressure.

DISCUSSION

Defendant contends substantial evidence does not support the trial court's finding that he was a major participant in the attempted robbery who acted with reckless indifference to human life.

Defendant was prosecuted for murder under the felony-murder rule as an aider and abettor. The jury was not instructed on premeditation and deliberation or the natural and probable consequences doctrine.

As pertinent here, effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) narrowed the felony-murder rule by amending section 189 to provide that a participant in the perpetration or attempted perpetration of specified felonies, including robbery, in which a death occurs is liable for murder only if (1) the person was the actual killer; (2) the person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in committing first degree murder; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d), the statute defining the felony-murder special circumstance. (Stats. 2018, ch. 1015, § 3; *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) Senate Bill 1437 also added what is now section 1172.6, creating a procedure for convicted murderers to seek relief if they cannot be convicted of murder under the

6

law as amended.  (Stats. 2018, ch. 1015, § 4; *Curiel,* at p. 449.)  Section 1172.6, subdivision (a) provides, in relevant part, that a person convicted of felony murder may file a petition with the court for resentencing "when all of the following conditions apply: [¶]  (1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder . . . .  [¶]  (2)  The petitioner was convicted of murder . . . following a trial . . . .  [¶]  (3)  The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

Where, as here, the trial court issues an order to show cause and holds an evidentiary hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder under California law as amended by Senate Bill 1437.  (§ 1172.6, subd. (d)(3).)  The parties may rely on evidence in the record of conviction or offer new or additional evidence at the hearing.  (*Ibid*.)  The trial court acts as an independent fact finder and determines whether the evidence establishes beyond a reasonable doubt that the defendant would be guilty of murder under the amended sections 188 and 189 and, therefore, ineligible for relief under section 1172.6.  (*People v. Cody* (2023) 92 Cal.App.5th 87, 110 (*Cody*).)

Because whether defendant was a major participant in the attempted robbery and acted with reckless indifference to human life involves questions of fact, we review the trial court's factual findings for substantial evidence.  (*People v. Underwood* (2024) 99 Cal.App.5th 303, 314; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017 (*Henley*).) "Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finders' findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)  We examine " ' "the entire record

7

in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' " (*Ibid.*)  We do not reweigh the evidence or judge the credibility of witnesses but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence.  (*Cody, supra*, 92 Cal.App.5th at pp. 112-113.)

When it amended section 189, Senate Bill 1437 incorporated the meaning of "major participant" and "reckless indifference to human life" elucidated in *Banks* and *Clark* in the felony-murder rule.  (§189, subd. (e); *People v. Strong* (2022) 13 Cal.5th 698, 710; *Henley, supra*, 85 Cal.App.5th at p. 1014.)  The California Supreme Court explained that the actus reus element – major participation in the crime – requires substantial personal involvement in the crime.  (*Banks, supra*, 61 Cal.4th at pp. 798, 802.)  Considering the totality of the circumstances, the trier of fact may consider the following factors in determining whether the defendant's participation in the crime was sufficiently significant to be considered major:  (1) the defendant's role in planning the crime that led to the victim's death; (2) the defendant's role in supplying or using lethal weapons; (3) the defendant's awareness of particular dangers posed by the nature of the crime, weapons used or past experience or conduct of the other participants; (4) whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the murder; (5) whether the defendant's conduct played a particular role in the death; and (6) the defendant's conduct after lethal force was used.  (*Id.* at p. 803.)  No one factor is necessary or necessarily sufficient.  (*Ibid*.)

Holmes and Merrill's testimony supports the trial court's finding that defendant was a major participant in the attempted robbery.  According to Holmes, the plan was that Garcia would knock on Kirby's door and Garcia, Merrill, and defendant would rush Kirby when Kirby opened the door.  Garcia and defendant had backpacks to carry out the robbery.  Merrill testified that Garcia explained to defendant where the apartment was

8

located because defendant did not know where it was, indicating that defendant had some participation in the planning. Holmes and Merrill testified that in discussing the plan to rob Kirby, Garcia told the group Kirby was a dealer and Kirby would be home. Before the Kirby crimes, defendant was present when a plan to commit a home invasion robbery of another dealer was abandoned in part because the dealer might have been armed. As the trial court found, defendant would have been aware that the particular type of robbery he agreed to commit involved a high risk of violence. (See *In re McDowell* (2020) 55 Cal.App.5th 999, 1011, 1013 [stating that a home invasion robbery of a drug dealer involved a high risk of violence, which was obvious, and was not a garden-variety robbery and it was foreseeable that customers or the dealer might be armed and more likely to resist]; *People v. Mora* (1995) 39 Cal.App.4th 607, 617 [stating that the defendant had to be aware of the risk of resistance and the extreme likelihood death could result when he planned an armed home invasion robbery of a drug dealer].)

Defendant did not propose alternatives to minimize the risk of violence. He was directly behind Garcia when Garcia and Kirby struggled over the gun, and he did not attempt to leave or minimize the risk of Garcia shooting Kirby. Instead, he pushed Garcia into Kirby's apartment as Kirby tried to close the door, and Kirby was shot in the struggle. After Garcia shot Kirby, defendant fled with Garcia and Merrill. Substantial evidence supports the trial court's finding that defendant was not merely a passive bystander at the scene; rather, his conduct played a role in Kirby's death.

The mens rea element – reckless indifference to human life – contains subjective and objective components. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances

9

known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*Ibid.*) Participation in an armed robbery and awareness that armed robberies carry a risk of death is not enough. (*Id.* at p. 682; *Clark, supra*, 63 Cal.4th at pp. 617-618; *Banks, supra*, 61 Cal.4th at pp. 805, 806-808.) The defendant must knowingly create a grave risk of death. (*In re Scoggins,* at p. 677; *Banks,* at p. 808.) The California Supreme Court has identified the following factors a trier of fact may consider in determining, under the totality of the circumstances, whether the defendant acted with reckless indifference to human life: (1) whether the defendant used or knew that a gun would be used during the underlying felony; (2) how many weapons were used; (3) whether the defendant was physically present at the crime, indicating the defendant shared in the actions and mental state of the other participants; (4) whether the defendant had the opportunity to restrain the crime or aid the victim; (5) the duration of the interaction between the perpetrators of the crime and the victim; (6) the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force; and (7) the defendant's efforts to minimize the risks of violence during the underlying felony. (*In re Scoggins*, at p. 677; *Clark*, at pp. 618-623.) The defendant's youth at the time of the offense is also a relevant factor. (*In re Moore* (2021) 68 Cal.App.5th 434, 454; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1088, fn. 7.) As with the factors concerning major participation in the crime, no one factor is necessary or necessarily sufficient to establish the requisite mens rea. (*Clark,* at p. 618.)

We conclude substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life. The "major participant" and "reckless indifference to human life" elements significantly overlap. (*Clark, supra*, 63 Cal.4th at p. 615.) " '[T]he greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Ibid.*) As we have explained, substantial evidence shows defendant was a major participant in the attempted

10

robbery. And as the trial court found, the fatal shot was fired when defendant helped Garcia rush Kirby as Kirby struggled to gain control of the gun. Defendant would have understood the grave danger to Kirby's life when Garcia and Kirby struggled over the gun. Instead of leaving or telling Garcia to stop, defendant helped Garcia rush Kirby, elevating the risk to Kirby's life. The evidence supports the finding that he acted with reckless indifference to human life. (*Cody, supra*, 92 Cal.App.5th at p. 113.)

"A defendant's actions after the shooting may also bear on the defendant's mental state." (*In re Scoggins, supra*, 9 Cal.5th at p. 679.) Defendant fled and did not check on Kirby or summon aid. Moreover, the neighbor's testimony established that defendant and his cohorts laughed as they ran from the scene of the shooting. Holmes testified that defendant looked like nothing had happened. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 483-484 [stating that a reasonable inference from the defendant's conduct, including strutting back to the car and laughing after the shooting and not expressing any outrage, is that the defendant did not care whether the victim died].) In addition, although the encounter between Kirby and Garcia was short, the robbery did not occur spontaneously and defendant had an opportunity to contemplate the risk of violence involved before the robbery occurred. There is no evidence defendant tried to minimize any risk of violence in the enterprise. Further, as the trial court found, there was no evidence defendant, who was 23 years old at the time of the attempted robbery, participated in the crime because of peer pressure or lack of experience, perspective, or judgment such that a finding that he acted with reckless indifference to human life would be inappropriate. (*Oliver,* at pp. 488-490 [holding that any error in failing to consider the defendant's youth as a factor in its *Banks/Clark* analysis was harmless where there was no evidence the 23-year-old defendant's conduct was motivated by impulsivity, vulnerability to peer pressure or lack of maturity]; cf. *In re Moore, supra*, 68 Cal.App.5th at p. 453-454 [concluding that 16-year-old defendant lacked the experience, perspective and judgment to adequately appreciate the risk of death posed by his actions].)

11

DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


/S/
MAURO, J.


We concur:


/S/
HULL, Acting P. J.


/S/
DUARTE, J.