Filed 11/17/21  P. v. Mercado CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS ANDRE MERCADO,<br><br>Defendant and Appellant. | F081633<br><br>(Super. Ct. No. CF96571931)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Franson, Acting P. J., Peña, J. and Snauffer, J.

## INTRODUCTION

In 1998, defendant Luis Andre Mercado pleaded guilty to first degree murder and admitted a related personal use of a firearm enhancement allegation after participating in a robbery of a bar during which an individual was killed. After the passage of Senate Bill No. 1437 (2017–2018) (Senate Bill 1437), he filed a Penal Code section 1170.95 petition for resentencing. (Undesignated statutory references are to the Penal Code.) The People opposed the petition, and the court concluded defendant had established a prima facie showing of entitlement to relief. The court then held an evidentiary hearing after which it denied defendant's petition, concluding the evidence established he was a major participant in the crime who acted with reckless indifference to human life. On appeal, defendant argues insufficient evidence supports the trial court's conclusion.

We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, defendant pleaded guilty to first degree murder. He also admitted to having personally used a firearm during the commission of the crime within the meaning of section 12022.5, subdivision (a). Pursuant to the plea bargain, the court dismissed a charge of second degree burglary (count Two) and two special circumstance allegations pursuant to section 190.2, subdivision (a)(17)(A) and (G) that alleged the murder was committed during the commission of a robbery and burglary. Defendant received a stipulated term of 35 years to life imprisonment. In his plea form, defendant stated his plea was based on the following facts: "I participated in a robbery during which someone was killed. (I did not kill the person.) I personally used a gun during the perpetration of the robbery."

### *Petition for Resentencing*

In 2019, defendant petitioned the court for resentencing pursuant to section 1170.95 using a preprinted form. He checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory

2.

or the natural and probable consequences doctrine; he pled guilty or no contest to first or second degree murder in lieu of going to trial because he believed he could have been convicted of first or second degree murder at trial pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). He also checked a box stating he was convicted of first degree murder but could not now be convicted because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. He asked the court to appoint him counsel during the resentencing process.

The People responded to the petition, arguing defendant was not entitled to relief because the facts of the case established he was a major participant in the underlying robbery who acted with reckless indifference to human life. They argued defendant was "an integral participant in the armed robbery and his act of firing into the ceiling when many patrons were present, and while he was standing over the body of the victim, evidenced a reckless indifference to human life." In support of the "major participant" element, the People argued defendant knew his confederates had a reputation for committing robberies and it could be inferred he was directly involved in planning the robbery and he persuaded the getaway driver to assist. They further asserted defendant "physically entered the saloon, was armed with a firearm, and actually discharged it during the robbery." Additionally, "his placement at the entrance of the saloon prevented anyone from leaving and kept the path clear for he and his co-participants to easily escape." The People argued the same facts also established defendant acted with reckless indifference to human life, particularly his act of "discharging his weapon in a crowded bar." They asserted the fatal shooting occurred at the beginning of the robbery at which

3.

point defendant would have reason to believe his confederates were likely to use lethal force again to accomplish the robbery, but he still did not leave and instead remained at the door while his co-perpetrator retrieved the cash drawer. They filed a separate submission identifying the documents they believed formed the record of conviction, including the information, the preliminary hearing transcript, defendant's plea form, the hearing on defendant's change of plea, the probation officer's report, the sentencing transcript, defendant's opening brief on appeal, and our court's opinion affirming the judgment.

After the parties submitted briefing on the petition, the court found defendant established a prima facie case for relief. Accordingly, the court issued an order to show cause and set the petition for an evidentiary hearing.

At the hearing, the People presented live testimony from retired detective Robert Schiotis, who had investigated the offense underlying defendant's conviction. Schiotis testified that in August 1996, there was a robbery and shooting at a bar. The bar was open when the shooting occurred and there were approximately 30 to 40 people present. The police located the owner of the getaway car, Frank Gonzales, and interviewed him. The police also eventually identified defendant and interviewed him twice. During the second interview, defendant discussed the incident.

Defendant stated, on the day of the robbery, he was "wasted" and with his friend Frank Gonzales when he received a text from someone he knew as "Big Eddie," later identified as Nathanial Bernal, who asked if defendant wanted to make some money. Defendant replied "yes," and he and Gonzales went to pick up Bernal and another male, Ray Bracamonte. Bernal then directed Gonzales to drive to a bar. Defendant, Bernal, and Bracamonte each had guns and put on masks. According to defendant, Bernal and Bracamonte instructed him to keep the people down when they went into the bar. Bernal and Bracamonte went in first and defendant heard shots fired; he then entered last. Upon entering, defendant saw the victim on the floor bleeding from the chest. Defendant

4.

stepped over the victim and shot his gun one time into the ceiling after entering. He saw Bernal jump over the bar and retrieve the cash register drawer. Then, they all ran out back to the car where Gonzales was waiting. They drove some distance, stopped the car, and ran. Defendant believed Bernal was somehow involved with the Bulldog gang.

The court ultimately denied defendant's petition for resentencing, concluding the evidence established, beyond a reasonable doubt, that defendant was a major participant in the underlying robbery resulting in death, and he acted with reckless indifference to human life. The court highlighted the following facts in support of its conclusion: defendant arranged for Gonzales to drive the night of the robbery and he introduced Gonzales to codefendants Bernal and Bracamonte; defendant conspired with his codefendants to commit a robbery; defendant, Bernal, and Bracamonte were all armed with guns, wearing face masks, and they all went into the bar to rob it during business hours; all three individuals fired their guns inside the crowded bar; defendant covered patrons "with his gun at the ready" while Bernal jumped over the bar and grabbed the cash register drawer; defendant's position near the exit prevented anyone from leaving and also kept the path clear for the robbers' escape; defendant entered last after Bernal shot the victim; he stepped over the victim and made no effort to help him; instead, he fired his gun "making sure none of the certainly terrified patrons could render aid to the victim." The court noted the other codefendants both fired their guns before defendant entered the bar. Nevertheless, defendant "did not hesitate, did not turn around and flee. He followed them in, stepped over the bleeding victim, fired his own gun, and covered the bar patrons while Bernal went to the cash register and took the money." Defendant showed reckless indifference to human life "[b]y firing his gun in a crowded room," standing over the victim who lay bleeding on the floor and failing to render aid, and by keeping other patrons at the bar from rendering aid by keeping his weapon drawn.

## DISCUSSION

Defendant challenges the denial of his petition for resentencing. We affirm the court's denial.

## 1. Senate Bill 1437 and Section 1170.95

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amends section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability, and it adds section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2–4.)

Section 1170.95 permits those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts ...."[1] (*Id.*, subd. (a).) An offender may file a petition under section 1170.95 where all three of the following conditions are met:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The

---

[1] The Legislature recently passed, and the Governor signed, a bill amending section 1170.95. (Sen. Bill No. 775 (2021–2022 Reg. Sess.).) The amendments are not yet effective (Cal. Const., art. IV, § 8, subd. (c)(1)) and, in any event, would not alter our analysis. We quote from the version of section 1170.95 presently in effect.

petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

A trial court receiving a petition under section 1170.95 "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court "shall issue an order to show cause." (*Ibid*.) The trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

**2.     Standard of Review**

On appeal from a denial of relief following an evidentiary hearing under section 1170.95, subdivision (d), we review the trial court's factual findings for substantial evidence. (See *People v. Clements* (2021) 60 Cal.App.5th 597, 618, review granted Apr. 28, 2021, S267624; accord, *People v. Lopez* (2020) 56 Cal.App.5th 936, 954, [substantial evidence standard of review applies to postjudgment orders involving judicial factfinding], review granted Feb. 10, 2021, S265974; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 238 [same], review granted Mar. 10, 2021, S266652.) Under that familiar standard, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt'" under section 188 as amended. (*People v. Morales* (2020) 10 Cal.5th 76, 88; *Clements*, *supra*, at p. 618.) To that end, we presume the existence of every fact the court as fact finder could reasonably deduce from the evidence in support of the court's order. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

### 3.    Applicable Law

Section 190.2 "identifies the circumstances under which murderers and accomplices can be punished by death or life imprisonment without parole…. For defendants who did not kill and lacked intent to kill, section 190.2, subdivision (d) permits such punishment only if they acted 'with reckless indifference to human life and as a major participant' [in] a qualifying felony like robbery." (*People v. Douglas* (2020) 56 Cal.App.5th 1, 7; accord, *In re Scoggins* (2020) 9 Cal.5th 667, 674 (*Scoggins*).) By incorporating this requirement, section 190.2 codified the holdings of *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), bringing California law "into conformity with prevailing Eighth Amendment doctrine." (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393; see *People v. Clark* (2016) 63 Cal.4th 522, 609; *People v. Estrada* (1995) 11 Cal.4th 568, 575; *In re McDowell* (2020) 55 Cal.App.5th 999, 1004–1005.) Section 190.2 thereby requires courts to "examine the defendant's *personal* role in the crimes leading to the victim's death and weigh the defendant's individual responsibility for the loss of life, not just his or her vicarious responsibility for the underlying crime." (*People v. Banks* (2015) 61 Cal.4th 788, 801 (*Banks*).)

*Enmund* held the death penalty could not constitutionally be imposed on a robbery getaway driver who was a minor participant in the crime, was not present when the murder was committed, and had no intent to kill or any culpable mental state. (*Enmund*, *supra*, 458 U.S. at pp. 784, 798, 801; accord, *Scoggins*, *supra*, 9 Cal.5th at p. 675.)

*Tison*, in contrast, did not preclude imposition of the death penalty for two defendants, brothers who helped their father and his cellmate—both convicted murderers—escape from prison. (*Tison*, *supra*, 481 U.S. at pp. 139, 151–152.) The brothers locked up the prison guards and armed the two prisoners during the escape. (*Id.* at p. 139.) A few days later, the group got a flat tire. (*Ibid.*) One of the brothers flagged down a passing car for help. (*Id.* at pp. 139–140.) The group then kidnapped at gunpoint

the family of four that was in the car, robbed them, and drove them into the desert. (*Id*. at p. 140.) The sons stood by while the father and cellmate shot the victims repeatedly. (*Id*. at p. 141.) The perpetrators left the family—which included a toddler and a teenager—to die in the desert, and drove off in the family's car. (*Id*. at p. 141.) *Tison* held the Eighth Amendment does not prohibit imposition of the death penalty on a nonkiller who lacked the intent to kill, but whose "participation [in the crime] is major and whose mental state is one of reckless indifference to the value of human life." (*Id*. at p. 152, see *id*. at pp. 157–158.)

*Enmund* and *Tison* helped define the constitutional limits for punishing accomplices to felony murder and establish a "'spectrum of culpability,'" with felony murderers who "'actually killed, attempted to kill, or intended to kill'" at one end, and minor actors who were not present on the scene and neither intended to kill nor had any culpable mental state at the other. (*Scoggins*, *supra*, 9 Cal.5th at p. 675; see *Banks*, *supra*, 61 Cal.4th at pp. 794, 800; *In re Loza* (2017) 10 Cal.App.5th 38, 46.) "Somewhere between them, at conduct less egregious than the Tisons' but more culpable than … Enmund's, lies the constitutional minimum" required for the imposition of a sentence of death or life without the possibility of parole. (*Banks*, at p. 802.) *Tison* and *Enmund* did not establish a ceiling or a floor for determining when an aider and abettor is eligible for such a sentence, however. (*In re Miller* (2017) 14 Cal.App.5th 960, 974, fn. 4; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1014, fn. 4.) The fact a particular defendant appears more culpable than Enmund does not automatically make him death eligible; conversely, neither must a defendant be as culpable as the Tison brothers in order for section 190.2, subdivision (d) to apply. The question is one of degree. (*In re Miller*, *supra*, at p. 974, fn. 4; *In re Bennett*, *supra*, at p. 1014, fn. 4.)

In *Banks* and *Clark*, our state Supreme Court clarified the meaning of the "major participant" and "reckless indifference to human life" requirements. *Banks* considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a

9.

major participant[.]" (*Banks*, *supra*, 61 Cal.4th at p. 794.) The court listed various factors that should be considered in making that determination: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.)

*Banks* found insufficient evidence to show the defendant there—a getaway driver for an armed robbery—was a major participant who acted with reckless indifference. (*Banks*, *supra*, 61 Cal.4th at pp. 804–808.) No evidence established his role in planning the robbery or procuring the weapons; during the robbery and murder he was absent from the scene, sitting in a car and waiting; and no evidence showed he had any role in instigating the shooting, or could have prevented it. (*Id.* at p. 805.) He was "no more than a getaway driver," like Enmund. (*Ibid.*)

The following year, in *Clark*, the court addressed the "reckless indifference" determination. (*Clark*, *supra*, 63 Cal.4th at pp. 614–618.) Reckless indifference to human life may be "'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' [Citation.]" (*Clark*, at p. 616, quoting *Tison*, *supra*, 481 U.S. at p. 157.) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, at p. 617.) Reckless indifference to human life has both a subjective and an objective component. (*Scoggins*, *supra*, 9 Cal.5th at p. 677.) Subjectively, "'the defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*,

10.

*supra*, 61 Cal.4th at p. 801; accord, *Clark*, at p. 617.) Objectively, "'"[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actors situation."'" (*Ibid.*; see *Clark*, at p. 617.)  The fact a robbery involved a gun or carried a risk of death is insufficient, by itself, to support a finding of reckless indifference.  (*Clark*, at pp. 617–618; see *Scoggins*, *supra*, 9 Cal.5th at p. 677 ["'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life"].)

    *Clark*, like *Banks*, listed various factors to be considered when determining whether a defendant acted with reckless indifference:  "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677 [listing factors set forth in *Clark*, *supra*, 63 Cal.4th at pp. 618–623].)

    Based on these factors, *Clark* concluded the defendant there did not act with reckless indifference to human life.  (*Clark*, *supra*, 63 Cal.4th at p. 623.)  The *Clark* defendant was the "mastermind" who planned and organized a computer store robbery, and waited across from the store's parking lot when the fatal shooting occurred.  (*Id.* at pp. 612, 619.)  His plan called for the robbery to take place after the store closed, when there would be fewer people present, for any remaining employees to be handcuffed, and for the use of a single, unloaded gun.  (*Id.* at pp. 620–622.)  However, during the robbery the mother of one of the employees—who had come to pick him up from work—entered

11.

the store, surprising the robbers, and the defendant's accomplice shot her. (*Id.* at p. 539.) As police cars arrived, the defendant fled the scene, leaving the shooter behind. (*Id.* at p. 537.) *Clark* concluded the defendant—who was not armed, was not physically present in the store when the shooting occurred, did not have the intent to kill, and attempted to minimize the likelihood of violence by timing the robbery for a time when fewer people would be present and use of an unloaded gun—did not act with reckless indifference to human life. (*Id.* at pp. 611, 618–623; *Scoggins*, *supra*, 9 Cal.5th at p. 676.)

More recently, our Supreme Court considered the reckless indifference inquiry in *Scoggins*, *supra*, 9 Cal.5th 667. *Scoggins* found an insufficient showing of reckless indifference where the defendant planned an unarmed assault and robbery in which one of his accomplices deviated from the contemplated plan and unexpectedly killed the victim. (*Id.* at pp. 671–672.) There, the defendant was swindled by the victim in the purchase of three television sets. (*Id.* at p. 671.) In response, the defendant recruited two close friends to ambush the victim, "'beat the shit'" out of him, and get the defendant's money back, while the defendant waited at a nearby gas station. (*Id.* at pp. 671, 678.) When the victim arrived, one of the friends pulled out a gun and shot him. (*Id.* at p. 672.) In concluding the evidence was insufficient to establish the defendant acted with reckless indifference, the *Scoggins* court considered that he was not present at the scene of the murder, was not in a position to restrain the shooter, did not know a gun would be used or that the victim would be killed, he attempted to minimize the risk of death by ordering the assault to occur in a public place in broad daylight, and he acted ambiguously after the shooting. (*Id.* at pp. 677–683.)

After the passage of Senate Bill 1437, section 189, subdivision (e)(3) now provides that a participant in a robbery where a death occurs may be liable for murder if the person was "a major participant in the [robbery] and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." Because the factors articulated by the California Supreme Court in *Banks*, *Clark*, and *Scoggins* construe the

12.

language in section 190.2, subdivision (d), which the Legislature incorporated into section 189, subdivision (e), these factors apply when determining a defendant's eligibility for relief under section 1170.95 as a person convicted of felony murder. (See *In re Taylor* (2019) 34 Cal.App.5th 543, 561 ["the standard under section 189, subdivision (e)(3) for holding such a defendant liable for felony murder is the same as the standard for a special circumstance under section 190.2(d), as the former provision expressly incorporates the latter"]; see generally *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419 [because "[t]he language of the special circumstance tracks the language of Senate Bill 1437 and the new felony-murder statutes," a jury's true finding on § 190.2, subd. (d) renders a § 1170.95 petitioner ineligible for relief]; accord, *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854.) Thus, we look to these factors in reviewing for substantial evidence a court's finding that a defendant was a major participant who acted with reckless indifference to human life.

## 4. Analysis

Defendant contends the court erred in denying his petition because substantial evidence did not support a finding he was a major participant in the attempted robbery or that he acted with reckless indifference to human life. He argues he had a minimal role in planning the robbery. Defendant asserts, though he had his own gun, he did not supply any of his codefendants with guns nor did he pick the bar to rob. There was also no evidence he knew of prior violent acts committed by Bernal. He contends, with regard to the underlying offense, he did not know "anyone had been shot until he walked in the door and saw the victim on the ground." He also argues the evidence only established he participated in an armed robbery, which was insufficient on its own to establish he acted with reckless indifference to human life. We conclude substantial evidence supports the trial court's finding defendant was a major participant in the underlying felony who acted with reckless indifference to human life.

13.

First, our inquiry turns to whether defendant qualified as a major participant in the underlying felony. (*Banks*, *supra*, 61 Cal.4th at p. 803 [factors to consider in determining whether defendant was major participant include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? No one of these considerations is necessary, nor is any one of them necessarily sufficient" (fn. omitted)]; accord, *Clark*, *supra*, 63 Cal.4th at p. 611.)

Here, there was some evidence defendant was involved in planning the armed robbery. Defendant was armed with a gun when he and Gonzales picked up Bernal and Bracamonte to "make some money." He, Bernal, and Bracamonte donned masks and agreed Bernal and Bracamonte would enter the bar first and defendant would follow. Defendant planned to keep the other bar patrons down while wielding his loaded weapon so his coparticipants could complete the robbery. Additionally, defendant supplied his own weapon, which he actually shot during the incident, though he did not supply weapons to Bernal and Bracamonte. There was also evidence defendant should have anticipated the armed robbery to be particularly dangerous given that all three perpetrators were armed with guns and they were attempting to rob the bar while it was open and full of people. Furthermore, though there was no evidence defendant was present in the bar when Bernal shot the victim, defendant admitted he entered the bar right after hearing gunshots. He continued to actively participate in the armed robbery despite knowing shots had been fired and after seeing the dying victim lying on the floor. Indeed, by defendant's own admission, he stepped over the bleeding victim and proceeded to wield and shoot his gun inside the front door while Bernal completed the

14.

robbery. Defendant made no attempt to aid the victim and, by standing at the front door and intimidating the other customers to remain on the ground, defendant's actions also prevented anyone else from rendering aid to the victim or from escaping. Defendant also made no effort to restrain Bernal or Bracamonte either before or after the shooting occurred. Rather, he continued to assist them in completing the robbery. Once the robbery was complete, defendant ran with his confederates to the car and they drove away from the scene. We conclude this record sufficiently established defendant acted as a major participant in the underlying felony. (See *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1089 [defendant acted as major participant who acted with reckless indifference to human life by instigating robbery and entering home armed and then using his weapon to keep other victims at bay throughout duration of robbery].)

We next turn to whether there is substantial evidence in the record before us to support the trial court's conclusion defendant acted with reckless indifference to human life. We conclude there is.

Notably, "factors demonstrating [defendant's] role as a major participant are highly relevant to the analysis of whether he acted with reckless indifference." (*In re Loza*, *supra*, 10 Cal.App.5th at p. 52.) Thus, the foregoing analysis is relevant to our inquiry into whether the evidence sufficiently established defendant acted with reckless indifference to human life.

It is true the California Supreme Court has held participation in an armed robbery and subjective awareness of the risk of death inherent in an armed crime is insufficient on its own to establish a defendant acted with reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at pp. 807–808.) But, here, the specific circumstances of the offense paired with defendant's conduct provide substantial evidence to support the trial court's conclusion defendant acted with reckless indifference to human life.

Defendant's actions after Bernal shot the victim are particularly relevant to the reckless indifference analysis in this case. (See *Scoggins*, *supra*, 9 Cal.5th at p. 679 ["A

15.

defendant's actions after the shooting may also bear on the defendant's mental state"].) This is not a situation in which "different inferences may be drawn from the circumstances" such that defendant's actions after the shooting "may not be very probative of his mental state." (*Ibid.*) Rather, the trial court could reasonably have interpreted defendant's actions after the shooting as indicative of his mental state.

Here, though defendant denied being present inside the bar when Bernal issued the fatal shot, there was evidence defendant entered the bar right after; he stepped over the victim who he saw was bleeding from the chest; and then defendant shot his own gun in the crowded bar. He did nothing to aid the victim; instead, he used his gun to ensure the other bar patrons stayed down, thereby preventing anyone else from rendering aid to the victim. (See *Clark*, *supra*, 63 Cal.4th at p. 619 [a defendant's "failure to provide aid while present at the scene" may be relevant].) He then helped his cohort complete the robbery and escape after the shooting occurred. (See *People v. Douglas*, *supra*, 56 Cal.App.5th at pp. 4, 10–11 [no evidence shooting came as a surprise and, after seeing store clerk "'on the floor shaking'" from a gunshot wound, the defendant "'went outside to look around,'" returned to the store, stole money from the cash register, "then emptied [the clerk's] pockets while the clerk lay on the ground with blood pooling around his head"]; *People v. Medina* (2016) 245 Cal.App.4th 778, 792 [that one defendant "helped [his cohort] escape and had no concern for the shooting victim" and other defendant heard shooting, returned to help his confederates, and "made no effort to determine if anyone was injured or to offer aid" supported special circumstance findings]; *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1754 [that "[the defendant] fled together with his accomplices and the robbery loot, leaving the victim to die" evidenced he was a major participant who acted with reckless indifference to human life]; accord, *Tison*, *supra*, 481 U.S. at pp. 151–152 [defendants acted with reckless indifference to human life by making no attempt to assist victims before, during or after shooting, but instead choosing to assist killers in their continuing criminal endeavors]; cf. *In re Ramirez*, *supra*, 32 Cal.App.5th

16.

at pp. 405–406 [no evidence of petitioner's conduct from which it could reasonably be inferred he harbored a willingness to kill or anticipated the potential for loss of human life beyond that usually accompanying an armed robbery].) Such evidence supports the trial court's finding defendant acted with reckless indifference to human life.

Additionally, other evidence also supports the trial court's conclusion defendant acted with the requisite mental state. As discussed, defendant knew guns would be used in the robbery and he was armed with his own loaded gun before entering the bar, which was open for business when the robbery occurred. Defendant did nothing to minimize the risk of violence during the robbery. To the contrary, he entered the crowded bar after hearing shooting and proceeded to shoot his own weapon while inside and he used his gun to intimidate the other bar patrons while Bernal completed the robbery. (See *Clark*, *supra*, 63 Cal.4th at p. 618 [noting a defendant's *use* of a firearm, even if he did not kill the victim, can be significant to reckless indifference analysis] cf. *In re Ramirez*, *supra*, 32 Cal.App.5th at p. 404 [defendant supplied guns used in attempted robbery and murder but there was no evidence any criminal conduct was contemplated at that time].) There was also no evidence he tried to talk his coparticipants out of engaging in violence during the crime.

We agree there was no evidence defendant knew of Bernal's or Bracamonte's propensity for violence before he agreed to participate in the armed robbery. But there was evidence defendant heard gunshots before entering the bar and then saw the shooting victim lying on the ground—at which point he was well aware of the potential for additional violence—and he proceeded to actively participate in the robbery anyway. And, while there was not specific evidence of the duration of the interaction, there was evidence of a window of opportunity for violence given that the defendants robbed a crowded bar while it was open and the plan was to hold the patrons at gunpoint while the robbery occurred. (See *People v. Mora* (1995) 39 Cal.App.4th 607, 617 [defendant had to be aware of risk of resistance to armed invasion]; cf. *Clark*, *supra*, 63 Cal.4th at pp.

17.

620–621 [robbery was planned for after closing time so period of interaction between perpetrators and victims was designed to be limited].)

Defendant also points to *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*) in which the court held a defendant's youth at the time of his offenses is a relevant factor in the reckless indifference analysis. (*Id.* at pp. 453–454.) In that case, the court held the evidence was insufficient to establish the defendant, Moore, acted with reckless indifference to human life. (*Id.* at pp. 451–452.) Moore sat in the car while his codefendant committed an armed robbery during which the codefendant shot the victim. (*Id.* at p. 452.) Although Moore was aware his codefendant had a gun, Moore did not use a gun or supply the gun to his codefendant. (*Ibid.*) He sat in the car while the robbery occurred and drove away from the scene with his codefendant immediately afterward. (*Ibid.*) The *Moore* court held, even if the evidence of Moore's role in planning the robbery, his failure to aid the victims, and his laughter with his confederates after the shooting could support a finding of reckless indifference for an adult, such evidence was insufficient to establish Moore, who was 16 at the time of the shooting, acted with the requisite mental state. (*Id.* at p. 453.) Rather, considering the totality of the circumstances, including Moore's youth at the time of the offenses, the *Moore* court concluded "no rational trier of fact could find that Moore acted with reckless indifference to human life." (*Id.* at p. 455.)

The facts of the present case are markedly different from *Moore*. Here, defendant actively participated in the underlying robbery. He was armed with a gun he shot and wielded inside the bar, using it to keep the other bar patrons at bay while his confederate completed the robbery. He was 19 at the time of the crimes. While this is young enough that the law recognizes it may reduce culpability in some circumstances, defendant was not a minor at the time of the offenses. (See, e.g., § 3051, subds. (a)(1), (b) [allowing youth offender parole hearings for those under 25 "at the time of the controlling offense"].) And he points to no evidence showing that his youth, or other personal

18.

characteristics, diminished his ability to appreciate the danger created by his conduct. Indeed, he joined Bernal and Bracamonte as armed backup *after* hearing shooting in the bar, and then shot his own weapon in the crowded bar *after* seeing the dying victim lying on the ground. (See *People v. Medina*, *supra*, 245 Cal.App.4th at p. 793.) Even considering defendant's age at the time of the offenses as a relevant factor in the reckless indifference analysis, the totality of the circumstances in this case supports the trial court's conclusion defendant acted with reckless indifference to human life; that is, defendant was "aware of and willingly involved in the violent manner in which the particular offense [was] committed." (*Banks*, *supra*, 61 Cal.4th at p. 801.) Accordingly, viewing the totality of the evidence in the light most favorable to the trial court's judgment, we conclude there was sufficient evidence to support the trial court's denial of defendant's petition for resentencing. (See *Clark*, *supra*, 63 Cal.4th at pp. 622–623.)

## DISPOSITION

The court's order denying defendant's section 1170.95 petition for resentencing is affirmed.